**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

JAMES EVERETT SHELTON, individually
and on behalf of a class of all persons and
entities similarly situated,

        Plaintiff

vs.

NATIONAL GAS & ELECTRIC, LLC

        Defendant.

Case No. 2:17-cv-04063-RBS

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT OR TO STAY THE PROCEEDING**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 3

STANDARD........................................................................................................................... 4

    1.  12(b)(1) and Article III Standing ................................................................. 4

    2.  12(b)(2) and Personal Jurisdiction ............................................................... 5

    3.  A Motion to Stay............................................................................................ 5

ARGUMENT.......................................................................................................................... 6

    1.  Mr. Shelton Falls within the TCPA's "Zone of Interests"............................ 6

        a.  Mr. Shelton Has Established that He Suffered Multiple Concrete
Injuries .............................................................................................10

        b.  Defendant's Calls Invaded Plaintiff's Privacy and Were a Nuisance..............12

        c.  Defendant Harmed Plaintiff by Occupying his Cellular Telephone
Line. .................................................................................................13

        d.  The Telemarketing Call Caused Mr. Shelton Wasted Time .............................14

        e.  Mr. Shelton Suffered Tangible Concrete Harm in the Form of
Economic Damages from the Use of his Cellular Telephone.........................15

    2.  The Court has Specific Jurisdiction over the Defendant. ........................................ 16

    3.  Plaintiff Faces Substantial Prejudice from a Stay through the Destruction of Calling
Records From Defendant's Telemarketers Until Defendant Gathers them. ............... 20

CONCLUSION................................................................................................................... 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abramson v. Caribbean Cruise Line, Inc.*,
   No. 2:14-cv-00435, 2014 U.S. Dist. LEXIS 88336 (W.D. Pa. June 23, 2014) ...........18, 19, 20

*Abramson v. CWS Apt. Homes, LLC*,
   No. 16-426, 2016 U.S. Dist. LEXIS 146627 (W.D. Pa. Oct. 24, 2016) .......................9, 18, 19

*Alston v. Countrywide Fin. Corp.*,
   585 F.3d 753 (3rd. Cir. 2009) ................................................................................................4

*American States Ins. Co. v. Capital Assocs.*,
   392 F.3d 939 (7th Cir. 2004) ...............................................................................................13

*Baker v. Caribbean Cruise Line*,
   No. CV 13-8246-PCT-PGR, 2014 WL 880634 (D. Ariz. Mar. 6, 2014) ...............................18

*Bee, Denning, Inc. v. Capital Alliance Grp.*,
   310 F.R.D. 614 (S.D. Cal. 2015) .............................................................................................1

*Booth v. Appstack, Inc.*,
   2016 U.S.Dist LEXIS 68886 (W.D. Wash. May 25, 2016).....................................................15

*Cabiness v. Educ. Fin. Sols.*,
   No. 16-cv-01109-JST, 2016 WL 5791411 (N.D. Cal. Sept. 1, 2016) ....................................10

*Caudill v. Wells Fargo Home Mortgage, Inc.*,
   2016 U.S. Dist. LEXIS 89136 (E.D. Ky. July 11, 2016).........................................................2

*Caudill v. Wells Fargo Home Mtg., Inc.*,
   Civ. No. 5:16–066, 2016 WL 3820195 (E.D. Ky. July 11, 2016).........................................11

*Charvat v. DelivercareRX, Inc.*,
   No. 14-cv-06832, Doc. No. 25 (N.D.Ill.)................................................................................22

*Clinton v. Jones*,
   520 U.S. 681, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997)........................................................5

*Cour v. Life360, Inc.*,
   No. 16-CV-00805-TEH, 2016 WL 4039279 (N.D. Cal. July 28, 2016) ................................10

*Czech v. Wall St. on Demand*,
   674 F. Supp. 2d 1102 (D. Minn. 2009)...................................................................................13

*Edwards v. Oportun, Inc.*,
   2016 U.S. Dist. LEXIS 106610 (N.D. Cal. June 14, 2016) ........................................................2

*Eisenstadt v. Baird*,
   405 U.S. 438, 92 S. Ct. 1029, 31 L. Ed. 2d 349 (1972)............................................................14

*Evans v. Nat'l Auto Div., L.L.C.*,
   No. 15-8714, 2016 U.S. Dist. LEXIS 123660 (D.N.J. Sept. 12, 2016) ....................................8

*Fini v. DISH Network L.L.C.*,
   955 F. Supp. 2d 1288 (M.D. Fla. 2013*)*..................................................................................15

*Fitzhenry v. Career Education Corporation, et. al.*,
   United States District Court for the Northern District of Illinois, Civil Action
   No. 14-cv-10172, Dkt. No. 101 .............................................................................................2, 22

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000)..........................................................4

*Giovaniello v. ALM Media, LLC*,
   726 F.3d 106 (2d Cir. 2013)....................................................................................................21

*Gould Elecs. Inc. v. United States*,
   220 F.3d 169 (3d Cir. 2000)......................................................................................................5

*Grand Entertainment Group, Ltd. v. Star Media Sales*,
   988 F.2d 476 (3d Cir.1993)..................................................................................................5, 17

*Heidorn v. BDD Marketing & Mgt. Co., LLC*,
   Case No. C-13-00229 JCS, 2013 WL 6571629 ......................................................................18

*Jamison v. Esurance Insurance Services, Inc.*,
   2016 WL 320646 (N.D. Tex. Jan. 27, 2016) ..........................................................................16

*Johansen v. National Gas & Electric, LLC*,
   Civil Action No. 2:17-cv-587 (S.D. Oh.)..................................................................................4

*Jones v. AD Astra Recovery Services, Inc.*,
   2016 U.S. Dist. LEXIS 73561 (D. Kan. June 6, 2016)..............................................................2

*Jones v. Revenue Assistance Corp.*,
   No. 14-10218-GAO, 2016 U.S. Dist. LEXIS 136993 (D. Mass. Aug. 31,
   2016*)* ........................................................................................................................................8

*Juarez v. Citibank, N.A.*,
   No. 16-CV-01984-WHO, 2016 WL 4547914 (N.D. Cal. Sept. 1, 2016) ...............................10

*Kafatos v. Uber Tech., Inc.*,
   2016 U.S. Dist. LEXIS 2526 (N.D. Cal. Jan. 8, 2016) ...............................................................2

*Konopca v. Ctr. for Excellence in Higher Education, Inc.*,
   2016 U.S. Dist. LEXIS 119853 (D. N.J. Sept. 6, 2016) ...........................................................2

*Krakauer v. Dish Network L.L.C.*,
   No. 1:14-CV-333, 2016 WL 4272367 (M.D.N.C. Aug. 5, 2016) ...........................................10

*Landis v. N. Am. Co.*,
   299 U.S. 248, 57 S. Ct. 163, 81 L. Ed. 153 (1936)..................................................................5

*Lathrop v. Uber Technologies, Inc.*,
   2016 WL 97511 (N.D. Cal. 2016) ..........................................................................................20

*LaVigne v. First Cmty. Bancshares, Inc.*,
   No. 1:15-CV-00934-WJ-LF, 2016 WL 6305992 (D.N.M. Oct. 19, 2016)..............................12

*Lawrence v. Texas*,
   539 U.S. 558, 123 S. Ct. 2472, 156 L. Ed. 2d 508 (2003).....................................................14

*Lee v. Credit Management*,
   846 F. Supp. 2d 716 (S.D. Tex. 2011) ....................................................................................15

*Leung v. XPO Logistics, Inc.*,
   2015 WL 10433667 (N.D. Ill. Dec. 9, 2015)...........................................................................15

*Levitt v. Fax.com*,
   No. WMN-05-949, 2007 WL 3169078 (D. Md. May 25, 2007)..............................................21

*Leyse v. Bank of Am. Nat'l Ass'n*,
   804 F.3d 316 (3d Cir. 2015).....................................................................................................6

*Luna v. Shac, LLC*,
   No. C14-00607 HRL, 2014 WL 3421514 (N.D. Cal. July 14, 2014).....................................18

*Mancini v. JPMorgan Chase Bank, N.A.*,
   2016 WL 1273185 (S.D. Fla. Mar. 28, 2016)...........................................................................2

*Marten v. Godwin*,
   499 F.3d 290 (3d Cir. 2007).........................................................................................5, 16, 17

*Martin v. Leading Edge Recovery Solutions., LLC*,
   2012 WL 3292838 (N.D. Ill. Aug. 10, 2012) .........................................................................15

*Mey v. Got Warranty, Inc.*,
   No. 5:15-CV-101, 2016 WL 3645195 (N.D.W. Va. June 30, 2016)......................................13

iv

*Mey v. Interstate National Dealer Services, Inc., et. al.*,
Civil Action No 14-cv-01846, Dkt. No. 82 (N.D. Ga.) ........................................................22

*Mey v. Venture Data, LLC*,
245 F. Supp. 3d 771 (N.D.W. Va. 2017) ...........................................................8, 9, 13

*Mims v. Arrow Fin. Servs.*, *LLC*,
132 S. Ct. 740 (2012) ...........................................................................................3

*Morris v. Plattform Advertising, Inc.*,
United States District Court for the Eastern District of Texas, Civil Action No.
13-cv-703, Doc. No. 35...........................................................................................22

*O'Hanlon v. 24 Hour Fitness USA, Inc.*,
2016 U.S. Dist. LEXIS 27509 (N.D. Cal. Mar. 2, 2016)............................................2

*Owens Ins. Co. v. European Auto Works, Inc.*,
695 F.3d 814 (8th Cir. 2012) ...............................................................................12

*Pasco v. Protus IP Sol., Inc.*,
826 F. SUPP. 2D 825 (D. MD. 2011) .......................................................................22

*Renner v. Lanard Toys Ltd.*,
33 F.3d 277 (3d Cir.1994)...............................................................................5, 16

*Rinky Dink Inc. v. Electronic Merchant Systems Inc.*,
No. C13-1347-JCC, 2014 WL 5880170 (W.D. Wash. Sept. 30, 2014)...................17

*Rivera, et. al. v. Exeter Fin. Corp.*,
2016 U.S. Dist. LEXIS 11505 (D. Colo. Feb. 1, 2016) ............................................2

*Rodriguez v. DFS Servs., LLC*,
2016 WL 369052 (M.D. Fla. Feb. 1, 2016) ............................................................2

*In re Rules & Regs. Implementing the TCPA*,
30 FCC Rcd. 7961 (2015)......................................................................................20

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act
of 1991*,
30 F.C.C. Rcd. 7961 (2015)................................................................................2, 3

*Rules & Regulations Implementing the Telephone Consumer Protection
Act*, 30 F.C.C.R. 7961 (2015) .............................................................................12

*In re Rules and Regulations Implementing the TCPA of 1991*,
18 FCC Rcd. 14014 (2003)...............................................................................15, 21

*In re Rules and Regulations Implementing the TCPA of 1991*,
    23 FCC Rcd. 559 (2007)........................................................................................................15

*In re Rules and Regulations Implementing the TCPA of 1991*,
    27 FCC Rcd. 1830 (2012).....................................................................................................15

*San Pedro-Salcedo v. Haagen-Dazs Shoppe Co.*,
    2017 U.S. Dist. LEXIS 168532 (N.D. CA., October 11, 2017)...............................................23

*Schwyhart v. AmSher Collection Serv., Inc.*,
    2016 U.S. Dist. LEXIS 56065 (N.D. Ala. Apr. 22, 2016).........................................................2

*Sliwa v. Bright House Networks, LLC*,
    2016 U.S. Dist. LEXIS 93852 (M.D. Fla. July 19, 2016)..........................................................2

*Soppet v. Enhanced Recovery Co., LLC*,
    679 F.3d 637 (7th Cir. 2012) ...........................................................................................12, 16

*Spokeo v. Robins*,
    136 S.Ct. 1540 (2016)................................................................................................ *passim*

*Stoops v. Wells Fargo Bank, N.A.*,
    2016 U.S. Dist. LEXIS 82380 (W.D. Pa. June 24, 2016)...........................................7, 8, 9, 10

*Susinno v. Work Out World Inc.*,
    862 F.3d 346 (3d Cir. 2017)..................................................................................................11

*Terec v. Reg'l Acceptance Corp.*,
    2017 U.S. Dist. LEXIS 22691 (M.D. Fla. Feb. 17, 2017) .......................................................2

*Toldi v. Hyundai Capital Am.*,
    2017 U.S. Dist. LEXIS 26205 (D. Nev. Feb. 23, 2017) ..........................................................2

*Toys "R" Us, Inc. v. Step Two, S.A.*,
    318 F.3d 446 (3d Cir. 2003)...................................................................................................17

*Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*,
    401 F.3d 876 (8th Cir. 2005) ..................................................................................................7

*Warnick v. DISH Network, LLC*,
    2014 U.S.Dist. LEXIS 138381 (D. Colo. Sept. 30, 2014).......................................................16

*Williams v. Ocwen*,
    8:16-cv-1223-T-26MAP (M.D. Fla., Feb. 21, 2017)................................................................2

**Rules**

Fed.R.Civ.P. 4(k)(1)(A) .....................................................................................................5, 16

Fed.R.Civ.P. 34(a) ..................................................................................................................22

**Statutes**

42 Pa.C.S.A. § 5322(b) ........................................................................................................5, 16

28 U.S.C. §1658(a) ................................................................................................................21

47 U.S.C. § 227....................................................................................................................12

47 U.S.C. § 227(a)(1)..............................................................................................................3

47 U.S.C. § 227(b)(1)(A)(iii)...................................................................................................1

**Other Authorities**

137 Cong. Rec. 30,821–30 (1991) ........................................................................................12

Eli A. Meltz, *No Harm, No Foul? Attempted Invasion of Privacy and the Tort of
    Intrusion Upon Seclusion*, 83 Fordham L. Rev. 3431, 3440 (May 2015) ................................14

## INTRODUCTION

Plaintiff James Shelton ("Plaintiff") filed this suit alleging that National Gas & Electric, LLC ("National Gas") made an unwanted, computer-dialed telemarketing call to his cellular telephone line using an unlawful automatic telephone dialing system ("ATDS" or "autodialer") prohibited by the Telephone Consumer Protection Act ("TCPA"). *See* 47 U.S.C. § 227(b)(1)(A)(iii). The call was made despite the fact that Plaintiff's telephone number was on the National Do Not Call Registry. The Plaintiff filed this matter as a putative class action lawsuit because "[i]n the context of the TCPA, the class action device likely is the optimal means of forcing corporations to internalize the social costs of their actions." *Bee, Denning, Inc. v. Capital Alliance Grp.*, 310 F.R.D. 614, 630 (S.D. Cal. 2015).

In response to this straightforward claim, National Gas launches an attack on the Plaintiff claiming that he falls outside the TCPA's "zone of interests" and asserts that consumers who receive illegal telemarketing calls do not suffer any injury following the United States Supreme Court's decision in *Spokeo v. Robins,* 136 S.Ct. 1540 (2016). This is an argument that courts have repeatedly rejected in the TCPA context, including the Third Circuit Court of Appeals earlier this year.

Second, National Gas claims that Mr. Shelton misrepresented his residence to the Court. However, as explained below, Mr. Shelton maintains his permanent residence in Pennsylvania, and the fact that he moved to Ohio a week after receiving the telemarketing call at issue doesn't change his residence. As Mr. Shelton received the calls while in Pennsylvania, and as National Gas directed its calls into Pennsylvania at Mr. Shelton's Pennsylvania area code, this Court has jurisdiction over National Gas.

Finally, National Gas seeks an indefinite stay pending resolution of challenges to the Federal Communications Commission's July 2015 Declaratory Ruling and Order, but fails to acknowledge that the appeal of the 2015 Order merely examines a limited question, and even a win for the appellant would not extinguish the fact that an ATDS cannot be used to contact a cellular telephone without being in violation of the TCPA. It is for these reasons that most courts have denied similar requests to stay by defendants.[1] Furthermore, this Court should reject National Gas's request for an indefinite stay because the Plaintiff faces the risk of extreme prejudice through the destruction of defendant's calling records that may be in the hands of the third parties it has performing telemarketing on its behalf. In recognition of this risk, one federal court required a defendant facing a telemarketing class action to retrieve records of their telemarketing vendors' calling activity while a motion to dismiss was pending. *See Fitzhenry v. Career Education Corporation, et. al.*, United States District Court for the Northern District of Illinois, Civil Action No. 14-cv-10172, Dkt. No. 101 ("The stay on discovery is modified for the

---

[1] *See e.g. Toldi v. Hyundai Capital Am.*, 2017 U.S. Dist. LEXIS 26205 (D. Nev. Feb. 23, 2017); *Williams v. Ocwen*, 8:16-cv-1223-T-26MAP (M.D. Fla., Feb. 21, 2017); *Terec v. Reg'l Acceptance Corp.,* 2017 U.S. Dist. LEXIS 22691 (M.D. Fla. Feb. 17, 2017); *Konopca v. Ctr. for Excellence in Higher Education, Inc*., 2016 U.S. Dist. LEXIS 119853, *7 (D. N.J. Sept. 6, 2016); *Sliwa v. Bright House Networks, LLC*, 2016 U.S. Dist. LEXIS 93852, *12 (M.D. Fla. July 19, 2016); *Caudill v. Wells Fargo Home Mortgage, Inc*., 2016 U.S. Dist. LEXIS 89136, at *9 (E.D. Ky. July 11, 2016); *Edwards v. Oportun, Inc*., 2016 U.S. Dist. LEXIS 106610, *16-*17 (N.D. Cal. June 14, 2016); *Jones v. AD Astra Recovery Services, Inc*., 2016 U.S. Dist. LEXIS 73561, *16 (D. Kan. June 6, 2016); *Schwyhart v. AmSher Collection Serv., Inc*., 2016 U.S. Dist. LEXIS 56065, *8 (N.D. Ala. Apr. 22, 2016); *Mancini v. JPMorgan Chase Bank, N.A*., 2016 WL 1273185, *1 (S.D. Fla. Mar. 28, 2016); *O'Hanlon v. 24 Hour Fitness USA, Inc*., 2016 U.S. Dist. LEXIS 27509, *16 (N.D. Cal. Mar. 2, 2016); *Rodriguez v. DFS Servs., LLC*, 2016 WL 369052, *3 (M.D. Fla. Feb. 1, 2016); *Rivera, et. al. v. Exeter Fin. Corp*., 2016 U.S. Dist. LEXIS 11505, *8 (D. Colo. Feb. 1, 2016); *Kafatos v. Uber Tech., Inc*., 2016 U.S. Dist. LEXIS 2526, at *4 (N.D. Cal. Jan. 8, 2016).

2

limited purpose of requiring Defendant to obtain and retain records of all outbound calls that were made for purposes of generation of leads for education services.").

## BACKGROUND

The Plaintiff brought this action under TCPA, which was enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs.*, *LLC,* 132 S. Ct. 740, 745 (2012). Plaintiff's claim is that National Gas violated the TCPA by using an ATDS to contact him on his cellular telephone on August 18, 2017. ECF No. 1 at ¶¶ 5, 19. National Gas did so in order to try to secure Plaintiff as a customer of its energy services. *Id.* at ¶ 20. The TCPA defined an ATDS as "equipment which has *the capacity* — (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *See* 47 U.S.C. § 227(a)(1) (emphasis added). According to the FCC, the agency charged with interpreting and administering the TCPA, a system qualifies as an ATDS if it has the "capacity" to automatically dial numbers from a stored list, "even if it is not presently used for that purpose." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 (2015) (the "2015 Order") at ¶ 10.

Because the call to the Plaintiff was transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who were sent the same illegal telemarketing call promoting National Gas. ECF No. 1 at ¶ 5. Unfortunately, Mr. Shelton is not the only individual who has received these solicitations. Plaintiff's counsel made a Freedom of Information Act request to the Federal Trade Commission, who is tasked with federal telemarketing law enforcement, and the FTC has

received multiple complaints about the Defendant. *See* Exhibit 1. Furthermore, nine call recipients on the website www.everycaller.com/phone-number1-832-769-0473 have reported getting "spam" telemarketing calls from the same number that called the Plaintiff. In fact, National Gas is also a defendant in another TCPA action relating to violation of a different section of the TCPA in Ohio. *See Johansen v. National Gas & Electric, LLC*, Civil Action No. 2:17-cv-587 (S.D. Oh.).[2] As such, the Plaintiff is seeking to represent the following class of individuals:

> All persons within the United States: (a) Defendant and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) promoting Defendant's products or services; (c) to their cellular telephone number; (d) using an  automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that beings four years before the date of the filing of [the] Complaint to trial.

ECF No. 1 at ¶ 40.

## STANDARD

### 1. 12(b)(1) and Article III Standing

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000). An injury-in-fact is "an invasion of a legally protected interest" that is "concrete and particularized." *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 762-63 (3rd. Cir. 2009) (*quoting Lujan v. Defenders of Wildlife*, 504 U.S.

---

[2] Some of the counsel for Mr. Shelton are also counsel for the plaintiff in the *Johansen* action.

4

555, 560 (1992). "[T]he court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to Plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

### 2. 12(b)(2) and Personal Jurisdiction

A federal court may exercise personal jurisdiction over a non-resident Defendant to the extent permissible under the law of the forum state. Fed.R.Civ.P. 4(k)(1)(A); *Marten v. Godwin,* 499 F.3d 290, 296 (3d Cir. 2007). Under Pennsylvania's long-arm statute, personal jurisdiction over a non-resident Defendant "to the fullest extent allowed under the Constitution of the United States." 42 Pa.C.S.A. § 5322(b); *Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 279 (3d Cir.1994). The statute's reach is coextensive with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Grand Entertainment Group, Ltd. v. Star Media Sales*, 988 F.2d 476, 481 (3d Cir.1993).

### 3. A Motion to Stay

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936). A "[d]istrict Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706, 117 S. Ct. 1636, 1650, 137 L. Ed. 2d 945 (1997). "The proponent of a stay bears the burden of establishing its need." *Id.* "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255.

## ARGUMENT

### 1. Mr. Shelton Falls within the TCPA's "Zone of Interests"

National Gas argues that Mr. Shelton does not fall within the TCPA's "zone of interests" because he has previously filed cases to vindicate his rights for illegal telemarketing calls. The Third Circuit Court of Appeals considered the TCPA's "zone of interests" in *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316 (3d Cir. 2015), holding that "a regular user of the phone line who occupies the residence being called undoubtedly has the sort of interest in privacy, peace, and quiet that Congress intended to protect." *Id.* at 326. The Third Circuit further stated that "because the TCPA is a remedial statute, it should be construed to benefit consumers." *Id.* at 327. Here, there is no ambiguity concerning the TCPA's application to Mr. Shelton. This action was brought by the recipient of an unsolicited, autodialed telemarketing call to enforce a statute designed to protect recipients of unsolicited, autodialed telemarketing calls. The meaning of the statute is plain, and the Court need go no further.

Notwithstanding the language of the statute, National Gas contends that Plaintiff "drums up TCPA litigation", and therefore should be stripped of the TCPA's protections. On what evidence, other than its own speculation and apparent resentment for being sued by Mr. Shelton, does National Gas base the assertion that Mr. Shelton wanted to be called? That Mr. Shelton has filed several lawsuits to *stop* illegal telemarketing calls and that his company's website informs telemarketing companies to not call his number on the National Do Not Call Registry or he will act against the company. Mr. Shelton's activities as a consumer advocate empowered by the congressionally-conferred private right of action to enforce the TCPA, supports one conclusion: that Mr. Shelton, a private citizen motivated to fight back against illegal telemarketers, is exactly the sort of plaintiff Congress intended the TCPA to protect, and fits squarely within the TCPA.

6

Rather, by actively holding defendants to account for their illegal acts via the private right of action afforded to consumers by Congress, Mr. Shelton is doing *exactly* what Congress intended—he is enforcing the law. *See Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876, 881 (8th Cir. 2005) (recognizing that fixed award liquidated damages under the TCPA demonstrate the intent to incentivize aggrieved parties to act as "private attorneys general").

National Gas's support for its position comes from *Stoops v. Wells Fargo Bank, N.A.,* 2016 U.S. Dist. LEXIS 82380 (W.D. Pa. June 24, 2016). However, a glaring factual distinction between that case and this matter is that the plaintiff in *Stoops* conceded that she purchased cell phones for the *sole purpose* of manufacturing TCPA claims. *See Id.* at \*32 ("Q. Does anyone you know ever call you at these phone numbers? A. No, ma'am. Q. Did you ever use any of these phone numbers to call anyone? A. No, ma'am…Q. How did you use this phone number after it was activated, if at all? A. For my business. Q. Okay. When you say for your business, what do you mean? A. Suing clients like yours, Wells Fargo, for violating the TCPA.")

Here, there is no such evidence that Mr. Shelton purchases or uses telephones for the sole purpose of bringing lawsuits under the TCPA. There's a good reason for that, it's not true. *See* Exhibit 2, Affidavit of James Shelton at ¶ 4. The phone that was called promoting National Gas services is the only cellular telephone that Mr. Shelton owns. *Id.* at ¶ 2. That phone is also the number used for the Plaintiff's business, Final Verdict Solutions. *Id.* at ¶ 5. Final Verdict Solutions was registered with the State of Pennsylvania on March 7, 2016, is in the judgment collection business, and has successfully collected approximately 30 judgments totaling more than $100,000, and has outstanding judgment receivables currently worth more than $600,000. *Id.* at ¶ 8. In other words, it's a successful new small business. The simple fact of the matter is

that Mr. Shelton does not collect telephones like the plaintiff in *Stoops* in order to "drum up TCPA litigation" like National Gas alleges[3], but instead will fight back when companies illegally contact him at his number listed on the National Do Not Call Registry.

With good reason, federal courts have been skeptical of defendants attempting to paint TCPA cases with a broad brush invoking *Stoops*. *See e.g. Jones v. Revenue Assistance Corp.*, No. 14-10218-GAO, 2016 U.S. Dist. LEXIS 136993, at \*16-17 (D. Mass. Aug. 31, 2016) ("Although Defendant argues that Plaintiff's only source of income since 2012 has been lawsuits, unlike the plaintiff in Stoops, Jones has not admitted that he "files TCPA actions as a business."); *Evans v. Nat'l Auto Div., L.L.C.*, No. 15-8714, 2016 U.S. Dist. LEXIS 123660, at \*8 (D.N.J. Sept. 12, 2016) ("As a consumer complaining of receiving intrusive telemarketing calls, Plaintiff falls directly within the zone of interests protected by the TCPA… *Stoops* is distinguishable from this case on the grounds that the plaintiff in that case acknowledged that she only purchased cell phones in order to file TCPA lawsuits.") In fact, as one federal court stated when distinguishing *Stoops* in *Mey v. Venture Data, LLC,* 245 F. Supp. 3d 771 (N.D.W. Va. 2017):

> It is true that the plaintiff has brought a number of TCPA cases. It is further true that she has telephone answering and recording equipment which is more sophisticated than that of the average consumer. It is not true that she seeks to receive such calls. She does nothing to attract the calls; in fact, her telephone number is listed on the National Do Not Call Registry. Rather, she uses her equipment to record and document TCPA calls when they do occur.
>
> This does not deprive the plaintiff of standing any more than the purchase of a burglar alarm would indicate that the homeowner wanted her house to be broken into.

---

[3] Recognizing that these realities are fatal to their position, National Gas attempts to recast Mr. Shelton's website as a business for TCPA lawsuits by claiming that his notice to telemarketers not to contact him is an admission, when instead it is an unfortunately necessary supplement to his inclusion on the National Do Not Call Registry to attempt to put companies on notice that he does not want their telemarketing calls. As this lawsuit, and the others he has filed, make clear, not all telemarketing companies respect the National Do Not Call Registry or Mr. Shelton's wishes, despite this notice.

In support of its argument, POS cites *Stoops v. Wells Fargo Bank, N.A.*, 197 F.Supp.3d 782 (W.D. Pa. 2016). In *Stoops*, the district court found that the plaintiff did not have standing to sue when she suffered no injury-in-fact. The plaintiff in *Stoops*, who resided in Pennsylvania, purchased and maintained over thirty cell phones with Florida telephone numbers and admitted to doing this because she knew the locations she selected in Florida were economically depressed and included people who would be defaulting on their loans or their credit cards. The plaintiff waited for the phones to ring; she sometimes answered the calls and told the callers to stop, but she testified her hope was that the calls would continue so she could treble her damages…

On the other hand, in *Fitzhenry v. ADT Corp.*, 2014 U.S. Dist. LEXIS 166243, 2014 WL 6663379, at *5 (S.D. Fla. Nov. 3, 2014), the Court held that "[a]though Plaintiff may have created a home environment that allows him to document telemarketing calls better than most consumers, the Court is not convinced that Plaintiff is outside of the TCPA's zone of interest…

This Court declines to follow *Stoops*. This plaintiff did not try to receive calls from other states. She secured equipment to document calls that came to her home. While POS is understandably frustrated by Ms. Mey's efficacy, she is doing exactly what Congress intended —enforcing the law.

Just like the plaintiff in *Mey*, Mr. Shelton has placed his number on the National Do Not Call Registry and does not want these unwelcomed calls, but will not vacillate in filing a claim against companies who illegally contact him, and this is exactly what the TCPA was intended for.

Closely analogous to this lawsuit is *Abramson v. CWS Apt. Homes, LLC*, No. 16-426, 2016 U.S. Dist. LEXIS 146627 (W.D. Pa. Oct. 24, 2016), where the Plaintiff filed a putative class action under the TCPA for a single automated telemarketing call, and the defendant asserted that Mr. Abramson, following the *Stoops* decision in the same district that *Stoops* was decided, did not suffer an injury in fact as he had filed more than 300 lawsuits to vindicate his rights under the TCPA. In denying the motion to dismiss, the Court found:

Abramson suffered a concrete harm analogous to the common law tort of invasion of privacy. Congress has determined unrestricted telemarketing "can be an intrusive invasion of privacy." In line with Congress' finding, courts hold "a plaintiff

9

demonstrates a violation of privacy interests, and therefore an injury-in-fact, after receiving automated calls" in violation of the Act. Abramson alleges CWS sent him the offending text message despite his lack of consent to receive telemarketing and his lack of business dealings with CWS. Abramson also claims he never provided CWS with his cell phone number. These facts adequately demonstrate Abramson suffered a concrete injury akin to a violation of his privacy interests.

We reject CWS's argument Abramson's pursuit of his rights under the Act in other lawsuits demonstrates the lack of an injury. As Abramson adequately pleads a concrete and particularized injury, he satisfies Article Ill's standing requirements. Abramson's decision to enforce his rights under the Act does not negate the existence of a cognizable injury.

*Id.* at *6-7 The facts are the same for Mr. Shelton; he received an automated solicitation call despite never doing business with the Defendant and never provided them with his phone number.

> a.      Mr. Shelton Has Established that He Suffered Multiple Concrete Injuries

In *Spokeo*, the Supreme Court confirmed that a plaintiff must plead a concrete and particularized injury, but clarified that an "intangible" injury is sufficient to confer Article III standing. Since *Spokeo,* district courts have repeatedly held that plaintiffs who allege under the TCPA that automated or prerecorded telephone calls to invade their privacy or are a nuisance, or who complain that the calls have occupied their phone lines preventing legitimate communications, have established Article III standing.[4] In fact, earlier this year, the Third Circuit

---

[4] *See Cabiness v. Educ. Fin. Sols.*, No. 16-cv-01109-JST, 2016 WL 5791411 (N.D. Cal. Sept. 1, 2016) (a TCPA violation "necessarily harms the recipient of the unwanted calls such that the statutory violation is sufficient on its own to constitute an injury in fact"); *Cour v. Life360, Inc.*, No. 16-CV-00805-TEH, 2016 WL 4039279, at *2 (N.D. Cal. July 28, 2016) (rejecting Life360's argument that invasion of privacy is insufficient to confer Article III standing); *Juarez v. Citibank, N.A.*, No. 16-CV-01984-WHO, 2016 WL 4547914, at *3 (N.D. Cal. Sept. 1, 2016) ("Juarez's allegation that he received repeated unwanted calls that caused him aggravation, nuisance, and an invasion of privacy, is sufficient to allege a 'concrete' and 'particularized' injury that establishes standing under *Spokeo*."); *Krakauer v. Dish Network L.L.C.*, No. 1:14-CV-333, 2016 WL 4272367, at *2 (M.D.N.C. Aug. 5, 2016) ("While class members did not necessarily pick up or hear ringing every call at issue in this case, each call created, at a minimum, a risk of an invasion of a class member's privacy" for purposes of Article III

10

Court of Appeals held:

> [W]e conclude that the injuries alleged by Susinno are concrete for two reasons. First, Congress squarely identified this injury. The TCPA addresses itself directly to single prerecorded calls from cell phones, and states that its prohibition acts "in the interest of [ ] privacy rights." 47 U.S.C. § 227(b)(2)(C). The congressional findings in support of the TCPA likewise refer to complaints that "automated or prerecorded telephone calls are a nuisance [and] . . . an invasion of privacy." Pub. L. 102-243, § 2. We therefore agree with Susinno that in asserting "nuisance and invasion of privacy" resulting from a single prerecorded telephone call, her complaint asserts "the very harm that Congress sought to prevent," arising from prototypical conduct proscribed by the TCPA. App. 11 (First Amended Complaint); *see also Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (finding two unwanted text messages constituted [**10] a concrete injury under the TCPA, as they "present the precise harm and infringe the same privacy interests Congress sought to protect")…

> Traditionally, a plaintiff's "privacy is invaded" for the purpose of an intrusion upon seclusion claim by telephone calls "only when [such] calls are repeated with such persistence and frequency as to amount to . . . hounding." Intrusion upon Seclusion, Restatement (Second) of Torts § 652B, cmt d (1977). The Second [**11] Restatement suggests that because "two or three" [*352] calls would not be "highly offensive to the ordinary reasonable [person]," they traditionally would provide no cause of action. *Id.* Yet when Congress found that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients," *Van Patten*, 847 F.3d at 1043, it sought to protect the same interests implicated in the traditional common law cause of action. Put differently, Congress was not inventing a new theory of injury when it enacted the TCPA. Rather, it elevated a harm that, while "previously inadequate in law," was of the same character of previously existing "legally cognizable injuries." *Spokeo*, 136 S. Ct. at 1549. *Spokeo* addressed, and approved, such a choice by Congress.

> For these reasons, we hold that Susinno has alleged a concrete, albeit intangible, harm under the Supreme Court's decision in *Spokeo*

*Susinno v. Work Out World Inc.,* 862 F.3d 346, 351-52 (3d Cir. 2017). This Court should

reach the same result here.

    As explained below, Plaintiff suffered at least four concrete injuries that have been

---

standing); *Caudill v. Wells Fargo Home Mtg., Inc*., Civ. No. 5:16–066, 2016 WL 3820195, at *2 (E.D. Ky. July 11, 2016) (noting that calls caused harms "such as the invasion of privacy [that] have traditionally been regarded as providing a basis for a lawsuit in the United States").

11

recognized under the common law, or by Congress: (1) invasion of privacy and a nuisance; (2) occupation of Plaintiff's cellular telephone; (3) wasted time; and (4) economic harm from the use of his cell phone. Each injury alone is sufficient in and of itself to establish Article III standing.

b.      Defendant's Calls Invaded Plaintiff's Privacy and Were a Nuisance

Nuisance and invasion of privacy are the precise harms that Congress sought to prevent in enacting the TCPA. Here, the Plaintiff has alleged that he and putative class members suffered particularized and concrete injuries because the calls at issue were a nuisance, forced class members to incur expenses, and violated class members' privacy rights—the exact harms that Congress sought to prevent in enacting the TCPA. *See* 47 U.S.C. § 227 (Congressional Findings); *see also Owens Ins. Co. v. European Auto Works, Inc.*, 695 F.3d 814, 819-20 (8th Cir. 2012) ("[T]he ordinary meaning of the term 'right of privacy' easily includes violations of the type of privacy interest protected by the TCPA.").

When Congress established the TCPA in 1991, it did so to protect consumers from the "nuisance, invasion of privacy, cost, and inconvenience that autodialed and prerecorded calls generate." *Rules & Regulations Implementing the Telephone Consumer Protection Act*, 30 F.C.C.R. 7961, 7979 (2015). Robocalls are, as the Act's sponsor put it, "the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." 137 Cong. Rec. 30,821–30, 822 (1991) (Statement of Sen. Hollings). And, "like the buckets enchanted by the Sorcerer's Apprentice, [they] continue until stopped by their true master." *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 639 (7th Cir. 2012); *see also LaVigne v. First Cmty. Bancshares, Inc.*, No. 1:15-CV-00934-WJ-LF, 2016 WL 6305992, at *7 (D.N.M. Oct. 19, 2016) ("The TCPA codifies the application of a long-recognized common law

12

tort of invasion of privacy, and the Court would add the tort of nuisance as well, for a particularly intrusive type of unwanted conduct: unauthorized 'robocalls.'"). Mr. Shelton filed this lawsuit to combat the proliferation of intrusive, nuisance telemarketing practices violative of class members' privacy rights. *See* ECF No. 1 at ¶¶ 1, 2, 13, 17, and 18. Because these harms are the very harm that Congress sought to prevent in enacting the TCPA, they are sufficiently "concrete" to satisfy Article III injury in fact standing as articulated in *Spokeo*.

      c.    <u>Defendant Harmed Plaintiff by Occupying his Cellular Telephone Line.</u>

One purpose of the TCPA is to "keep[] telephone lines from being tied up." *American States Ins. Co. v. Capital Assocs.*, 392 F.3d 939, 942 (7th Cir. 2004). Just as the privacy interests identified in the TCPA are grounded in the common law tort of invasion of privacy, the harm caused by unwanted robocalls to cell phones has a close relationship to the harm recognized by the ancient common law tort "trespass to chattels." *Mey v. Got Warranty, Inc.*, No. 5:15-CV-101, 2016 WL 3645195, at \*6 (N.D.W. Va. June 30, 2016). Indeed, courts have repeatedly held that the electronic intrusion upon another person's computerized electronic equipment, even if temporary, constitutes trespass to chattels. *See, e.g., Czech v. Wall St. on Demand,* 674 F. Supp. 2d 1102, 1122 (D. Minn. 2009) (declining to dismiss cell phone owner's trespass to chattels claim against sender of unwanted text messages).

In *Mey v. Got Warranty, Inc.*, the court found trespass to chattels to be "a close analog for a TCPA violation" and held that the defendant's occupation of the plaintiff's telephone line was a concrete injury sufficient to establish Article III standing for the plaintiff's TCPA claim. 2016 WL 3645195, at \*6. The *Mey* court thus denied the defendant's motion to dismiss for lack of standing, explaining that "the TCPA can be viewed as merely applying this common law tort to a 21st-century form of personal property and a 21st-century method of intrusion." *Id.* This Court should reach the same result here. As in *Mey,* Plaintiff received illegal prerecorded telemarketing

13

on his cellphone, which occupied the lines, and prevented Plaintiff from engaging in legitimate communications. *See* Dkt. No. 1 at ¶ 38.

*Spokeo* also recognized that an injury would satisfy Article III's "concreteness" requirement if the injury "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 2016 WL 2842447 at *7. Invasion of privacy is just such a harm long recognized by the common law. Almost all states recognize invasion of privacy as a common law tort. *See* Eli A. Meltz, *No Harm, No Foul? Attempted Invasion of Privacy and the Tort of Intrusion Upon Seclusion*, 83 Fordham L. Rev. 3431, 3440 (May 2015) (state-by-state survey; "Currently, the vast majority of states recognize the intrusion strand of invasion of privacy either under common law or by statute"). In enacting the TCPA, Congress repeatedly recognized that telemarketing calls are violative of consumers' privacy rights. The right to privacy is also protected under the Constitution. *See, e.g.*, *Lawrence v. Texas*, 539 U.S. 558, 123 S. Ct. 2472, 156 L. Ed. 2d 508 (2003); *Eisenstadt v. Baird*, 405 U.S. 438, 92 S. Ct. 1029, 31 L. Ed. 2d 349 (1972). Accordingly, as the protections afforded consumers under the TCPA have a close relationship to the right of privacy and nuisance long recognized by the common law, consumers who allege a violation of the TCPA adequately allege a concrete "injury in fact" sufficient to satisfy Article III's standing requirements.

    d.    <u>The Telemarketing Call Caused Mr. Shelton Wasted Time</u>

The first post-*Spokeo* decision to address whether a mere allegation of a TCPA violation satisfies Article III's requirement of "injury in fact" holds that wasting the recipient's time is a concrete injury that satisfies Article III:

> Here, the court is satisfied that Plaintiffs' allegations demonstrate "concrete injury" as elucidated in *Spokeo*. In *Spokeo*, the "injury" Plaintiffs incurred was arguably merely procedural and thus non-concrete. In contrast, the TCPA… violations

alleged here, if proven, required Plaintiffs to waste time answering or otherwise addressing widespread robocalls. The use of the autodialer, which allegedly enabled Defendants to make massive amounts of calls at low cost and in a short period of time, amplifies the severity of this injury. As Congress and Washington State's legislature agreed, such an injury is sufficiently concrete to confer standing.

*Booth v. Appstack, Inc.*, 2016 U.S.Dist LEXIS 68886, *15-17 (W.D. Wash. May 25, 2016). This decision is consistent with a number of pre-*Spokeo* decisions which also recognized that lost time is an adequate injury-in-fact in TCPA and other cases. *See Leung v. XPO Logistics, Inc*., 2015 WL 10433667, *4 (N.D. Ill. Dec. 9, 2015) ("Leung alleges that he lost time in responding to XPO's call. … That is enough, so XPO's motion must be denied."); *Martin v. Leading Edge Recovery Solutions., LLC*, 2012 WL 3292838, at *3-4 (N.D. Ill. Aug. 10, 2012) ("[plaintiffs suffered an injury in fact] because they had to spend time tending to unwanted calls").

       e.    <u>Mr. Shelton Suffered Tangible Concrete Harm in the Form of Economic Damages from the Use of his Cellular Telephone.</u>

Finally, not only has Mr. Shelton alleged concrete but "intangible" harms due to invasion of privacy, nuisance, trespass to chattel and wasted time, but he also sustained "tangible" sustained economic harm as a direct result of National Gas's illegal telemarketing practices. The calls at issue were received on a cell phone used by and paid for by Mr. Shelton. The FCC has long recognized that the recipient of telemarketing calls to a cell phone is "charged" for such calls, even if the cell phone subscribes to a plan that charges a flat monthly rate. *See In re Rules and Regulations Implementing the TCPA of 1991,* 18 FCC Rcd. 14014, 14115 (2003); *In re Rules and Regulations Implementing the TCPA of 1991*, 23 FCC Rcd. 559, 562 (2007); *In re Rules and Regulations Implementing the TCPA of 1991*, 27 FCC Rcd. 1830, 1839–40 (2012); *Fini v. DISH Network L.L.C.*, 955 F. Supp. 2d 1288, 1297 (M.D. Fla. 2013*)*; *Lee v. Credit Management*, 846 F. Supp. 2d 716, 729 (S.D. Tex. 2011). As Mr. Shelton paid for his monthly

15

cell phone on which he received the telemarketing calls at issue, Mr. Shelton has alleged a tangible injury in fact sufficient to satisfy Article III's standing requirement. *See Warnick v. DISH Network, LLC,* 2014 U.S.Dist. LEXIS 138381 * 43-46 (D. Colo. Sept. 30, 2014) (rejecting argument that because plaintiff did not have a pay per call plan he did not suffer any injury as a result of the calls at issue); *Soppet v. Enhanced Recovery Co.*, LLC, 679 F.3d 637, 638 (7th Cir. 2012) (consumers ultimately bear the costs of calls to violative calls to cell phones regardless of "whether they pay in advance or after the minutes are used"). This "tangible" harm is sufficient to confer standing under *Spokeo.*

The invasion of privacy and the allegation that the illegal calls cost Plaintiff and the class money—financial harm—are not speculative future injuries or injuries based on the violation of rights provided in a statute. *See e.g. Jamison v. Esurance Insurance Services, Inc.,* 2016 WL 320646, *3 (N.D. Tex. Jan. 27, 2016) ("Here, Jamison alleged that when Esurance violated the TCPA, it caused her to incur cellular telephone charges or to reduce her previously-paid-for cellular telephone time, and that it invaded her privacy. Dkt. 7, Pl.'s First Am. Compl. ¶ 49. At this stage, this pleading is sufficient to establish an injury in fact.").

## 2. **The Court has Specific Jurisdiction over the Defendant.**

A federal court may exercise personal jurisdiction over a non-resident Defendant to the extent permissible under the law of the forum state. Fed.R.Civ.P. 4(k)(1)(A); *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007). Under Pennsylvania's long-arm statute, personal jurisdiction over a non-resident Defendant "to the fullest extent allowed under the Constitution of the United States." 42 Pa.C.S.A. § 5322(b); *Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 279 (3d Cir.1994). The statute's reach is coextensive with the Due Process Clause of the Fourteenth Amendment to

16

the United States Constitution. *See Grand Entertainment Group, Ltd. v. Star Media Sales*, 988 F.2d 476, 481 (3d Cir.1993).

Specific personal jurisdiction exists "when the claim arises from or relates to conduct purposely directed at the forum state." *Marten v. Godwin*, 499 F.3d at 296. To establish specific jurisdiction, Plaintiff must prove: (1) the defendant has purposefully directed his activities at the forum; (2) Plaintiff's claim arises out of or relates to at least one of those specific activities, and (3) that the court's exercise of jurisdiction over the defendant comports with traditional notions of fair play and substantial justice. *Id.*

The basis for National Gas's assertion is that Mr. Shelton filed a *pro se* Complaint in Ohio recently claiming that he was living in Ohio. That's true, as Mr. Shelton, currently in this third year at Case Western Reserve University, lives in the state of Ohio while at school, and has since August 25, 2017. *See* Exhibit 2, Affidavit of James Shelton at ¶ 11. However, Mr. Shelton maintains a permanent residence in King of Prussia, PA, as he averred. *Id.* at ¶ 12. Mr. Shelton was in Pennsylvania when he received the call at issue. *Id.* at ¶ 13. Furthermore, Mr. Shelton has submitted a credit card statement, which confirms his presence in Pennsylvania until August 25, 2017, when he left for Ohio. *Id.* at ¶ 14. Moreover, "[i]t is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept Plaintiff's allegations as true, and is to construe disputed facts in favor of Plaintiff." *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 457 (3d Cir. 2003).

Having clarified that issue, resolving this matter in Pennsylvania makes sense. Courts have repeatedly held where a defendant makes a call or sends a message into the forum state in violation of the TCPA, this action is sufficient to confer specific jurisdiction over the defendant. *See e.g. Rinky Dink Inc. v. Electronic Merchant Systems Inc.*, No. C13-1347-JCC, 2014 WL

17

5880170, at *2–3 (W.D. Wash. Sept. 30, 2014) (finding express aiming where defendant transmitted calls to telephone numbers with Washington area codes, even if at the direction of another party); *Luna v. Shac, LLC*, No. C14-00607 HRL, 2014 WL 3421514, at *3 (N.D. Cal. July 14, 2014) (finding that a defendant who intentionally texts a cell phone number with a California area code in violation of the TCPA has expressly aimed its conduct at California); *Heidorn v. BDD Marketing & Mgt. Co., LLC*, Case No. C-13-00229 JCS, 2013 WL 6571629 at *7–8 (finding specific jurisdiction where plaintiff received unsolicited emails and phone calls at a number with a California area code); *Baker v. Caribbean Cruise Line*, No. CV 13-8246-PCT-PGR, 2014 WL 880634, at *2 (D. Ariz. Mar. 6, 2014) (finding specific jurisdiction established where defendant made calls to plaintiff's Arizona number).

In fact, courts in Pennsylvania had denied similar motions, where a foreign corporation makes a call into this District and then, unsurprisingly, get hauled into court in this District. For example, Judge Cohill held in *Abramson v. Caribbean Cruise Line, Inc.,* No. 2:14-cv-00435, 2014 U.S. Dist. LEXIS 88336 at *23-24 (W.D. Pa. June 23, 2014):

> First, we note that the call made by CCL was to a phone number bearing a (412) area code - such a code is limited to residents of Pennsylvania. By initiating a call to such a number, it can be said that Defendant CCL "expressly aimed their conduct at Pennsylvania" because the number was associated with the State of Pennsylvania. See Marten, 499 F.3d at 296. Defendant would have, or should have, known it was reaching into Pennsylvania when the call was made. This satisfies the requirement for sufficient minimum contacts under the law.

Similarly in *Abramson v. CWS Apartment Homes, LLC*, No. 16-426, 2016 U.S. Dist. LEXIS 146627, at *10-11 (W.D. Pa. Oct. 24, 2016), Judge Kearney held:

> District courts across the country have found purposeful direction based on allegations a defendant sent its telemarketing call to a number bearing the state's area code…We likewise find purposeful direction based on Abramson's averment CWS sent the text message to his cell phone bearing a Pennsylvania area code.

18

> The remaining requirements of specific personal jurisdiction are satisfied. As to the second requirement, Abramson's claim under the Act arises from this text message. As to the third requirement, CWS must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." In making this determination, we consider: 1) the burden on CWS; 2) the interests of Pennsylvania; 3) Abramson's interest in obtaining relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and 5) the shared interest of the several states in furthering fundamental substantive social policies.
>
> CWS fails to meet its burden under this test. Only the first factor weighs in CWS's favor, as CWS has no apparent affiliation with Pennsylvania absent the text message and CWS claims defending a case in Pennsylvania would be a hardship because it is based in Texas. The remaining factors, however, do not demonstrate the exercise of jurisdiction contravenes fair play and substantial justice. As to the second factor, Pennsylvania "has an interest in ensuring that its residents have adequate recourse for harms inflicted by nonresidents." As to the third factor, Abramson has an interest in obtaining relief for violation of his rights under the Act. As to the remaining factors, CWS fails to identify facts weighing against the exercise of jurisdiction. CWS fails to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."

The material facts of this case mirror *Abramson*. Mr. Shelton's cell phone was intentionally called in Pennsylvania as part of the National Gas telemarketing campaign, and Mr. Shelton's claim arises under the TCPA for that automated conduct, as discussed above. Furthermore, National Gas has not carried its burden as to why defending this lawsuit in a jurisdiction where they directed their telemarketing would be unreasonable. Unlike *Abramson*, where the defendant did not offer goods or services in Pennsylvania, National Gas acquires Pennsylvania residents for its energy services, as it was trying to do with the Plaintiff. As a result, this court's exercise of jurisdiction over the Defendant comports with traditional notions of fair play and substantial justice. As Judge Cohill found in the *Abramson v. Caribbean Cruise Line, Inc.* matter:

> Finding the necessary minimum contacts to establish specific personal jurisdiction over Defendant CCL, we move to considerations of whether litigation in this forum would offend "traditional notions of fair play and substantial justice." International Shoe v. Washington, 326 U.S. at 320…Because we found sufficient minimum contacts between CCL and Pennsylvania, and because CCL has failed to "present a compelling case that the presence of some other considerations would render

19

jurisdiction unreasonable," we find that our exercise of specific personal jurisdiction over CCL does not offend the traditional notions [*25] of fair play and substantial justice. See Grand Entertainment, 988 F.2d at 483 (quoting Burger King, 471 U.S. at 477) (Noting that after sufficient minimum contacts are found, "it becomes the defendant's burden to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable").

2014 U.S. Dist. LEXIS 88336 at 24-25. To conclude that there is no specific jurisdiction when a defendant intentionally sent a telemarketing text message to a Plaintiff that it admits it has no business relationship with would likely eviscerate enforcement of the TCPA, since telemarketers could simply call individuals with impunity, knowing that they would be required to come to their home state in order to litigate a dispute. Defendant's position is contrary to routine assertions of jurisdiction in cases asserting personal torts.

### 3. Plaintiff Faces Substantial Prejudice from a Stay through the Destruction of Calling Records From Defendant's Telemarketers Until Defendant Gathers them.

In the July 2015 FCC Order, the FCC clarified that the TCPA's use of the term 'capacity' in the definition of 'automatic telephone dialing system' to make clear that the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities. *See In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, at ¶ 17 (2015) ("That ruling holds that even if a system is not being used as an ATDS at the time of the call at issue, if it could be so used at any time, it would qualify as an ATDS.")*; Lathrop v. Uber Technologies, Inc.,* 2016 WL 97511 at *2 (N.D. Cal. 2016). The petitioners in *ACA International* are only challenging the definition of "capacity" as set forth in the 2015 FCC Order. In other words, the D.C. Circuit is only being asked to rule upon one specific and narrow aspect of the definition of ATDS and nothing further. *ACA International* will not serve to alter or interpret the longstanding statutory definition of an ATDS or any holdings which pre-date the 2015 FCC Order. In fact, the

20

FCC set forth a similar ruling it its 2003 Order, "The TCPA … also provides that, in order to be considered an 'automatic telephone dialing system,' the equipment need only have the "capacity to store or produce telephone numbers." *See* 18 FCC Rcd. 14014 ¶ 131 (July 3, 2003)."). In other words, no matter what the DC Circuit holds, the parties will need to conduct discovery on the capacity of the dialing system used to contact Mr. Shelton and the putative class members.

However, a stay comes with an extreme risk of prejudice for the Plaintiff, as the Plaintiff's putative class is based off the fact that the TCPA claims are governed by the four year federal statute of limitations in 28 U.S.C. §1658(a) ("Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues"); *See also Giovaniello v. ALM Media, LLC*, 726 F.3d 106, 115 (2d Cir. 2013) (four-year statute of limitations applies to private TCPA claims in federal court). However, not all telecommunications companies, including the companies that are used to engage in automated telemarketing, keep records of telephone activities for up to four years, and without an immediate gathering of records, the likelihood of destruction of this evidence increases with each passing day. As detailed in a chart of national telecommunications providers and their respective call detail record retention policies compiled by the Department of Justice, many of the major telecommunications providers will only retain call record information for 12-18 months, and presumably smaller telecommunications providers keep this information for an even shorter period of time. *See* <u>Exhibit 3</u>.

Several TCPA putative class action cases have turned on the spoliation of telephone records that would permit a putative class plaintiff to identify additional class members. *See, e.g., Levitt v. Fax.com*, No. WMN-05-949, 2007 WL 3169078, at *2 (D. Md. May 25, 2007) (denying class certification where "critical information regarding the identity of those who received the

21

facsimile transmissions" was not available); *see also Pasco v. Protus IP Sol., Inc.*, 826 F. Supp. 2d 825, 831 (D. Md. 2011) (granting summary judgment where plaintiffs "[had] no transmission data on which to support their claims that Protus sent them the unsolicited faxes at issue."). Without these telemarketing call records, a motion for class certification will be difficult (and potentially impossible) to support.

Courts have consistently held that such calling records are within the Fed.R.Civ.P. 34(a) "control" of the entities that hire those telemarketing parties. *See e.g. Charvat v. DelivercareRX, Inc.*, No. 14-cv-06832, Doc. No. 25 (N.D.Ill.) (granting motion to compel requiring a defendant to produce the vendor's call records); *Mey v. Interstate National Dealer Services, Inc., et. al.*, Civil Action No 14-cv-01846, Dkt. No. 82 (N.D. Ga.) (same). This is sensible because those third parties that are hired by defendants are often small, judgment proof, and outside of the United States, so not subject to the subpoena power of the parties. *See e.g. Morris v. Plattform Advertising, Inc.*, United States District Court for the Eastern District of Texas, Civil Action No. 13-cv-703, Doc. No. 35. (Requiring the defendant to gather call records from the Philippines); *Fitzhenry v. Career Education Corporation, et. al.*, United States District Court for the Northern District of Illinois, Civil Action No. 14-cv-10172, Dkt. No. 101.[5]

National Gas doesn't address this preservation issue in their motion. National Gas presumably will claim that the Plaintiff should be able to retrieve the documents it needs from the subpoenas. Putting aside the fact that discovery has not commenced, this would result in improper discovery burden shifting, and if these records aren't gathered, they face the risk of destruction and the Plaintiff may be unable to support his eventual motion for class certification. If the Court were inclined to stay this case, there is a real and demonstrated risk that call records

---

[5] The calling records in this case were in India.

essential to class claims will disappear. Addressing this issue, another court denied an identical

motion in a putative TCPA last month:

> This Court, however, disagrees that a stay is justified...Regardless of the outcome of ACA International, it is **[*9]** likely that Defendant will be required to produce discovery to settle any factual disputes regarding their technology. See *Glick v. Performant Financial Corp., No. 16-cv-5461, 2017 U.S. Dist. LEXIS 28373, 2017 WL 786293, at \*2 (N.D. Cal. Feb. 27, 2017)* (citing *Lathrop v. Uber Techs., Inc., No. 14-cv-5678, 2016 U.S. Dist. LEXIS 2490, 2016 WL 97511, at \*4 (N.D. Cal. Jan. 8, 2016)* ("[A]lthough the decision in ACA International may vacate portions of the 2015 FCC Order, discovery in this case will be required regardless of the outcome in that one."). In addition, although a decision from the D.C. Circuit may be issued shortly, there may be further appeals. It is impossible to forecast when a final, binding decision in ACA International will be rendered. In the meantime, delaying this case would prejudice Plaintiff. The passage of time will make it more difficult to reach class members and will increase the likelihood that evidence will dissipate.

*See San Pedro-Salcedo v. Haagen-Dazs Shoppe Co.*, 2017 U.S. Dist. LEXIS 168532 *8-9 (N.D.

CA., October 11, 2017). For this reason alone, the stay request should be denied.

## CONCLUSION

For the foregoing reasons, National Gas's motion should both be denied.

23

Plaintiff,
By Counsel,

Dated: November 21, 2017          By:   _/s/ Anthony Paronich_____
                                              Anthony Paronich
                                              Email:  anthony@broderick-law.com
                                              BRODERICK & PARONICH, P.C.
                                              99 High St., Suite 304
                                              Boston, Massachusetts  02110
                                              Telephone:  (508) 221-1510
                                              *Pro Hac Vice*

                                              Clayton S. Morrow
                                              Email: csm@consumerlaw365.com
                                              Morrow & Artim, PC
                                              304 Ross Street, 7th Floor
                                              Pittsburgh, PA 15219
                                              Telephone: (412) 281-1250

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2017, I filed the foregoing with the Clerk of Court,

which will automatically send notification of such filing to all attorneys of record by placing the

same on the Court's electronic docket.


                                              _/s/ Anthony Paronich_____
                                              Anthony Paronich

24