# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA
### PHILADELPHIA DIVISION

| | |
|---|---|
| JAMES EVERETT SHELTON, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL GAS & ELECTRIC, LLC,<br><br>Defendant. | Civil Action No. 2:17-cv-04063-RBS |

## REPLY IN SUPPORT OF DEFENDANT NATIONAL GAS & ELECTRIC, LLC'S MOTION TO DISMISS

As he acknowledges, Plaintiff James Shelton publishes his business telephone number on his company's website. He uses that same number for his judgment-recovery business, a component of which, he does not credibly deny, is dedicated to generating TCPA lawsuits. Shelton's conduct—and the conduct of enterprising plaintiffs like him—has transformed the TCPA into a posterchild for lawsuit abuse. The TCPA was never meant to be used in this way, and nothing in Shelton's opposition brief demonstrates that the Court should make an exception here.

*First*, Shelton lacks constitutional standing under Article III because, as his own allegations demonstrate, he has not suffered the kind of concrete, particularized injury Article III requires. A "missed call" to his published business number—a call that Shelton affirmatively returned so he could elicit a sales pitch and play along with it—does not constitute the particularized, concrete injury Article III requires. Shelton's cases, which principally involve individuals who had been bombarded with calls to their *personal* cell phones or to their private residences, do not stand for the proposition that enterprising plaintiffs can manufacture

constitutional standing in the way Shelton has attempted here.

*Second*, Shelton inappropriately conflates prudential and constitutional standing—which are separate doctrines, requiring separate analyses, under the law. In any event, he fails to meet the prudential-standing test because his conduct—namely, using a published business telephone number to generate TCPA lawsuits for a profit—does not fall within the zone of interests the TCPA protects.

*Third*, there is a significant question as to whether this Court possesses personal jurisdiction over National Gas with regard to Shelton's claim because, by making inconsistent representations in two ongoing federal cases, Shelton has called into question whether he is an actual resident of this forum. If he is a resident of Ohio, as he currently alleges in another active federal lawsuit, then the Court may well lack personal jurisdiction over National Gas absent a showing that there is an affiliation between Shelton's TCPA claim and National Gas's activities in Pennsylvania. Shelton does not adequately explain in his opposition either (a) how he can be both a resident of Ohio and Pennsylvania at the same time, or (b) how he could have received calls (to the same number) both in Pennsylvania and Ohio within mere days of each other.

*Fourth*, Shelton has not shown he will suffer any prejudice by a brief stay until the D.C. Circuit decides a highly anticipated issue involving the meaning of an automatic telephone dialing system ("ATDS")—the outcome of which may well significantly affect this case. Shelton's purported concern about spoliation is a red herring, because the parties have existing preservation obligations that will remain in effect whether or not the Court grants a stay.

I.   **Shelton Lacks Article III Standing**

   A.   **Shelton Has Suffered No Concrete Injury**

Shelton lacks Article III constitutional standing because he has suffered no concrete, particularized injury. Indeed, it runs counter to logic and common sense for Shelton to claim, on

the one hand, that he has suffered an invasion of privacy, that his phone line was "occupied," that National Gas "wasted" his time, and that he suffered economic damages when, on the other hand, he published his business cellular number on the internet and, in this case, affirmatively returned a missed call so he could play along with a sales pitch to manufacture a lawsuit. This is not the kind of concrete injury Article III requires. *See generally*, *e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) (noting that plaintiffs "cannot manufacture standing merely by inflicting harm on themselves"); *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 802 (W.D. Pa. 2016) (no constitutional standing where plaintiff brought TCPA claim as a business).

It is true that in certain circumstances intangible injuries can be concrete enough to establish constitutional standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016). To meet the concreteness test for an intangible injury, the plaintiff must show that (a) Congress has, through statute, "squarely identified" the complained-of intangible harm, and (b) the harm bears a "close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit." *Id.* ("In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles."); *Susinno v. Work Out World, Inc.*, 862 F.3d 346, 350 (3d Cir. 2017) (same).

Although Shelton argues that he suffered harm when he allegedly received a missed call from National Gas on a business telephone number he publishes on the internet, that is simply not the kind of harm that gives rise to constitutional standing: such "harm" is neither the kind that Congress has "squarely identified" as meriting protection, nor does such "harm" bear a close relationship to the kinds of harm courts traditionally protect.

As applicable here, in the context of alleged automated or prerecorded calls, it is true that Congress enacted the TCPA to protect against nuisance and invasion of privacy. *See Susinno*,

862 F.3d at 348, 351. Indeed, in *Susinno*, the plaintiff, Ms. Susinno, demonstrated a concrete-enough intangible injury because (a) the TCPA squarely prohibited an unsolicited prerecorded, one-minute-long voicemail message left on the plaintiff's cell phone, and (b) there was a sufficient relationship between that single one-minute prerecorded call and an intrusion upon Ms. Susinno's right to seclusion. *Id.* at 348, 351–52. But despite the representations he makes in his opposition, Shelton is not like Ms. Susinno at all. Instead, he is more akin to the plaintiff in *Stoops* because he uses his advertised business phone number as part of an overall plan to ensnare potential telemarketers so he can profit from TCPA litigation.  *See Stoops*, 197 F. Supp. 3d at 798. Shelton admits, as he must, that he uses the subject cell phone for his company, Final Verdict Solutions.  (Aff. of James Everett Shelton ¶ 5, ECF No. 8-2 ("Shelton Aff.").) Unlike Ms. Susinno, Shelton's purported harm—namely, a "missed" call to a published *business* number—is simply not the kind of invasion of privacy, nuisance, or other harm (tangible or otherwise) that the TCPA is meant to guard against. *See generally*, *e.g.*, *Bank v. Indep. Energy Grp. LLC*, No. 12-cv-1369, 2014 WL 4954618, at *2 (E.D.N.Y. Oct. 2, 2014) ("Residential subscribers receive the lion's share of the protections afforded by the TCPA based on the higher expectation of privacy in the home as compared to the workplace.").

And in any event, the plaintiff in *Susinno* alleged the defendant left a minute-long prerecorded promotional offer on her voicemail. 862 F.3d at 348. Shelton, by contrast, alleges only that he received a single *missed* call, and that the caller left a one-word, *non*-prerecorded message—"hello"—on Shelton's voicemail. (Compl. ¶ 26, ECF No. 1.) Only after Shelton affirmatively "called the telephone number back" did he receive any purported telemarketing pitch. (*Id.* ¶ 28.)  As he boldly acknowledges on his company's website, he "played along with" National Gas's "telemarketer script" after returning a missed call so that he could, in turn, sue

- 4 -

National Gas. (*See id.*; *see also* http://www.finalverdictsolutions.com.).

In an effort to distance himself from *Stoops*, Shelton offers an affidavit that claims he does "not purchase or use telephones for the sole purpose of bringing lawsuits under the TCPA." (Shelton Aff. ¶ 4.) But that narrow characterization misreads the case: In *Stoops*, Judge Gibson found that the plaintiff lacked constitutional standing *not merely* because she purchased cell phones for the sole purpose of bringing TCPA lawsuits, but more generally because the plaintiff, like Shelton here, "file[d] TCPA actions as a business," and therefore her "privacy interests were not violated when she received calls" from the defendant. *Stoops*, 197 F. Supp. 3d at 798, 800. Shelton lacks standing for precisely the same reason.

Shelton's other cited authorities are likewise distinguishable. They principally involve an invasion of privacy, a nuisance, or some other harm to a *consumer* or *individual* and do not involve calls to a published business telephone number used as part of a lawsuit-generating business. They certainly do not involve a situation like the one presented here, where a plaintiff affirmatively returns a "missed" call and then plays along with the representative who answers, in order to create a TCPA suit. For example, in *Abramson v. CWS Apartment Homes*, there were no allegations that the offending text messages were sent to the plaintiff's published business line as part of a lawsuit-generating business. No. 16-cv-426, 2016 WL 6236370, at *2 (W.D. Pa. Oct. 24, 2016). And in *Owners Insurance Company v. European Auto Works, Inc.*, 695 F.3d 814, 820 (8th Cir. 2012), the court noted that the TCPA protects against unwanted advertising faxes, which "can disrupt a *householder's* peace and quiet." *Id.* (emphasis added); *see also*, *e.g.*, *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 639 (7th Cir. 2012) (involving debt-collection calls to individuals' cell phones); *LaVigne v. First Cmty. Bancshares, Inc.*, 215 F. Supp. 3d 1138, 1142 (D.N.M. 2016) (involving repeated calls made to consumer-plaintiff's personal cell

phone).[1]

Here, there is no question that Shelton's telephone number is used for his business, at least part of which is devoted to generating TCPA litigation. (*See* Shelton Aff. ¶ 5; Def.'s Mem. to Mot. to Dismiss 6–8, ECF No. 5-1). An alleged single call to that published business number, with a one-word and non-commercial voicemail message (a call that Shelton affirmatively returned), is not the kind of injury that gives rise to Article III standing.

### B. Shelton's Claim That He Placed His Number On The National Do-Not-Call Registry Is Immaterial

In order to help him satisfy the concrete-injury requirement, Shelton repeatedly emphasizes that he purportedly placed his business cellular number on the National Do-Not-Call Registry. (Pl.'s Opp'n at 1, 6, 8, 9, & n.3, ECF No. 8 ("Opp'n").) This does nothing to support his standing argument. "The National Do Not Call Registry is only for personal phone numbers," not for business telephone numbers.[2] "As the [Federal Communications] Commission has previously stated, the National Do-Not-Call Registry applies to 'residential subscribers' and does

---

[1] Shelton's other cases are equally unavailing on the constitutional-standing issue. *See*, *e.g.*, *Cabiness v. Educ. Fin. Sols., LLC*, No. 16-CV-01109, 2016 WL 5791411, at *1 (N.D. Cal. Sept. 1, 2016) (plaintiff was "bombarded" with numerous calls to her personal cell phone after innocently calling a company she mistakenly thought was the Department of Education); *Juarez v. Citibank, N.A.*, No. 16-cv-01984-WHO, 2016 WL 4547914, at *1 (N.D. Cal. Sept. 1, 2016) (plaintiff adequately alleged defendant made 42 calls to plaintiff's cellular phone in one month in attempt to collect a debt); *Krakauer v. Dish Network L.L.C.*, 168 F. Supp. 3d 843, 845 (M.D.N.C. 2016) (plaintiff sufficiently alleged concrete injury in the context of unwanted calls made to class members who had registered their personal numbers "on a do-not-call list"); *Caudill v. Wells Fargo Home Mortg., Inc.*, No. 16-cv-066, 2016 WL 3820195, at *2 (E.D. Ky. July 11, 2016) (plaintiff satisfied constitutional standing requirement where he alleged defendant made up to four calls a day over a four-year period in attempt to collect a debt). Indeed, in one of Shelton's cited cases, the court actually ***granted with prejudice*** the defendant's motion to dismiss the plaintiff's TCPA claim, which Shelton fails to point out. *Cour v. Life360, Inc.*, No. 16-cv-00805, 2016 WL 4039279, at *4 (N.D. Cal. July 28, 2016) (dismissing TCPA claim because plaintiff could not show defendant sent the offending text message). Finally, in *Jones v. Experian Information Solutions*, No. 14-cv-10218, 2016 WL 8679218, at *1 (D. Mass. Sept. 30, 2016) (cited at Opp'n 8), Shelton quotes from a section of a magistrate judge's report and recommendation on an issue the district court expressly did not reach. *See id.* at *1, n.1. ("Because the plaintiff's inability to prove an essential element of his claim is dispositive, this Court need not consider the defendant's challenge to the plaintiff's standing.").

[2] Federal Trade Commission, Consumer Information, National Do Not Call Registry, *available at* https://www.consumer.ftc.gov/articles/0108-national-do-not-call-registry.

not preclude calls to businesses.  To the extent that some business numbers have been inadvertently registered on the national registry, calls made to such numbers will not be considered violations of our rules." *Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 9779, 9785 (June 17, 2008); *see also*, *e.g.*, *Bank*, 2015 WL 4488070, at *2 (granting summary judgment in defendants' favor in a TCPA case because defendants demonstrated that plaintiff held out his telephone number "to the public as a business line").

In this instance, therefore, whether Shelton did or did not register his business telephone with the National Registry is immaterial to the standing analysis. Shelton's invocation of cases where the individual plaintiffs received calls to a personal number registered with the National Registry are therefore inapposite. *See generally*, *e.g.*, *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 783–84 (N.D. W.Va. 2017) (holding that plaintiff, a "stay-at-home mom," who had listed her telephone number on the National Registry had constitutional standing even though she had filed several other TCPA lawsuits);[3] *Krakauer*, 168 F. Supp. 3d at 845 (involving unwanted calls made to individuals who had registered their numbers "on a do-not-call list"). Thus, Shelton's reference to registration of his number on the Do Not Call list does not bolster his standing claim at all but, to the contrary, highlights the way in which he seeks to misuse the TCPA and related regulations as a vehicle for business gain.

## II. Shelton Lacks Prudential Standing Because His Alleged Harm Is Outside The TCPA's Zone of Interests

Prudential standing is a separate requirement from—and uses a separate analysis than—Article III constitutional standing. *See*, *e.g.*, *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316,

---

[3] Notably, Shelton baldly overstates the similarities between *Mey* and the current lawsuit. In his opposition brief, he claims that "[a]s in *Mey*, [Shelton] received illegal prerecorded telemarketing on his cellphone, which occupied the lines, and prevented Plaintiff from engaging in legitimate communications." (Opp'n 13–14.) But Shelton's own complaint makes no allegations of any prerecorded telemarketing. On the contrary, he alleges only that National Gas's telemarketing representative merely said "hello" on Shelton's voicemail. (Compl. ¶ 27.)

323–24 (3d Cir. 2015) (noting that Article III standing "is not the only barrier" a TCPA plaintiff faces; plaintiff must also demonstrate that his "interests fall within the zone of interests protected by the law invoked"); *UPS Worldwide Forwarding v. United States Postal Serv.*, 66 F.3d 621, 625 (3d Cir. 1995) ("Standing has constitutional and prudential components, both of which must be satisfied before a litigant may seek redress in the federal courts.").[4] As Shelton's cases themselves demonstrate, the zone of interests Congress intended to protect by enacting the TCPA includes rights of individuals to be spared the intrusive invasion of privacy and nuisance. *Leyse*, 804 F.3d at 325. In other words, the TCPA's provisions about automated dialing (so-called "robocalls") were enacted principally "to protect residential privacy," not enterprising plaintiffs like Shelton. *Id.* at 326 (citing *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1258 (11th Cir. 2014)); *see also Stoops*, 197 F. Supp. 3d at 805 (noting that by enacting the TCPA, Congress intended "to protect consumers from the proliferation of intrusive, nuisance [telemarketing] calls to their homes. . . . [and] from *unwanted* automated telephone calls").

Although Shelton invokes highly charged language from the case law and the Congressional Record to demonstrate that his alleged harm is within the TCPA's zone of interests, the authority he cites actually demonstrates the opposite. For example, in *Leyse*, the Third Circuit held that prohibiting unwanted robocalls to the "occupants of private residences" was within the TCPA's zone of interests. *Leyse*, 804 F.3d at 326–27. The Third Circuit noted— and as Shelton points out in his opposition (Opp'n 12)—one Senator's remark that robocalls are the "scourge of modern civilization" because they "wake us up in the morning; they interrupt our

---

[4] Shelton's opposition brief conflates constitutional standing under Article III with principles of prudential standing, blurring the distinction between the two. Indeed, at least organizationally, all of Shelton's constitutional standing arguments fall under his "zone of interest" heading in his opposition brief. (*See* Opp'n at i.) But the "zone of interests" test for prudential standing is not part of the analysis for constitutional standing. The two standing principles are unique, and Shelton's conflation of them misapprehends the law.

dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." *Leyse*, 804 F.3d at 326 (quoting 137 Cong. Rec. 30,821–22 (1991)). That may very well be true of calls to *residential* lines or personal cellular numbers. But calls to advertised *business* lines don't pose the same risk of interrupting dinner, forcing senior citizens out of bed, or waking people up in the morning. Neither the Senator's comments nor any of the cases Shelton cites demonstrates that the TCPA was meant to protect enterprising plaintiffs who publish their business telephone numbers on the internet and then use calls to those numbers to generate TCPA lawsuits for a profit. *See generally Stoops*, 197 F. Supp. 3d at 805 ("Plaintiff's interests, which include[d] purchasing cell phones with the hope of receiving calls from creditors for the sole purpose of collecting statutory damages [were] not among the sorts of interests [the TCPA was] specifically designed to protect.").[5] Shelton has not shown, and cannot show, that he is seeking to remedy a wrong that the TCPA was specifically designed to prevent.[6]

### III. Shelton Has Not Adequately Demonstrated That This Court Has Personal Jurisdiction Over National Gas

Shelton does not deny that the Court lacks general personal jurisdiction over National Gas. He argues only that specific personal jurisdiction exists, an issue on which Shelton bears the

---

[5] *Evans v. National Auto Division* does not help Shelton's arguments, either. In that case, which offers very little discussion on prudential standing, the Court denied defendant's motion to dismiss because defendant's evidence that the plaintiff was associated with "a large number of phone numbers" was, without more, insufficient to refute the plaintiff's showing that he fell within the TCPA's zone of interests. *Id.* No. 15-cv-8714, 2016 WL 4770033, at *3 (D.N.J. Sept. 13, 2016). Here, by contrast, the issue is not simply whether Shelton has filed other TCPA lawsuits—he indisputably has. The issue is that Shelton publishes his cell phone number as a business number for his company Final Verdict Solutions, and as National Gas has shown, a slice of that company—as noted on the company's website—is devoted to developing TCPA litigation.

[6] That Shelton purports to bring his TCPA lawsuits as a "consumer advocate" (Opp'n 6) does not change the result. He still lacks prudential standing under *UPS Worldwide Forwarding* because advancing the legal interests of third parties generally is insufficient on its own: the litigant must demonstrate that it is asserting its own interests, not those of third parties. 66 F.3d at 625.

burden. *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987); *see also Parker v. Learn Skills Corp.*, 530 F. Supp. 2d 661, 670 (D. Del. 2008). The plaintiff must establish facts demonstrating personal jurisdiction "with reasonable particularity; he may not rely on general averments in the bare pleadings." *Streamline Bus. Servs., LLC v. Vidible, Inc.*, No. 14-cv-1433, 2014 WL 4209550, at *4 (E.D. Pa. Aug. 26, 2014) (citing *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). Shelton has not met his burden, and indeed, his recent representations in *Shelton v. LIG International*, which conflict with his representations before *this* Court, call into question Shelton's veracity.

Although he now says that he maintains a "permanent residence" in Pennsylvania and that he "was in Pennsylvania when he received the call at issue" on August 18, 2017, (Opp'n 17; Compl. ¶ 23), Shelton told the Ohio federal court that he received several calls in August 2017—including on August 8, 9, 21, 22, 23, and 29—in Ohio. (Pl.'s Am. Compl. ¶¶ 5–6, *Shelton v. LIG Int'l LLC*, No. 1:17-cv-1868, ECF No. 4 (N.D. Ohio filed Sep. 13, 2017) ("Ohio Am. Compl.").) Indeed, Shelton says in the Ohio case that he "received the phone calls to his private mobile telephone number [including the calls in late August 2017] as a resident of Cuyahoga County," Ohio. (*Id.* ¶ 5.)[7] But the August 18, 2017 call at issue here is sandwiched between several calls Shelton cites to in his Ohio case—including one such call that took place within 72 hours of the alleged August 18th call in the present lawsuit. (*Compare* Ohio Am. Compl. ¶ 46–47 *with* Compl. ¶ 23.)

Although Shelton points to cases where courts have found that calls made to residents of the forum state give rise to personal jurisdiction, Shelton ignores the obvious point that he has

---

[7] There are other inconsistencies in Shelton's representations between the two lawsuits. For example, in the Ohio case, Shelton alleges that his cell phone number—the same one at issue here—is his "private mobile number," (*id.* ¶ 5), but in *this* case, Shelton confirms in his affidavit that that number is used for his business, Final Verdict Solutions, (Shelton Aff. ¶ 5).

alleged in signed pleadings in other courts that he is *not* a resident of this forum, but a resident of an entirely different forum. Shelton does not dispute—nor can he—that an alleged call from a Texas entity made to a (self-described) Ohio resident simply cannot give rise to personal jurisdiction in *Pennsylvania*, absent some strong connection between the alleged harm and the entity's activities in Pennsylvania.

Shelton's invocation of *Abramson v. CWS Apartment Homes* is unavailing. 2016 WL 6236370, at *4. First, that case was decided before the U.S. Supreme Court's recent decision in *Bristol-Myers Squibb Co. v. Superior Court of California*, which requires there be a clear "affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State . . . ." 137 S. Ct. 1773 (2017).[8] Second, the *Abramson* case involved a Pennsylvania plaintiff, not a nonresident. *Abramson*, 2016 WL 6236370, at *4 (noting that Pennsylvania "has an interest in ensuring that its *residents* have adequate recourse for harms inflicted by nonresidents," (emphasis added)). Here, by contrast, although Shelton purports to be a Pennsylvania resident, he has alleged in a different case that he is an Ohio resident and that calls to the same cellphone number at issue in this case—made at around the same time as the single call he complains of here—were all part of his Ohio, not Pennsylvania, residency. This calls into question the personal-jurisdiction allegations Shelton puts forth in this case, and at a minimum, the Court should hold an evidentiary hearing to ensure the jurisdictional requirements are satisfied.[9] In any case, and in light of his allegations in the

---

[8] For the same reason, Shelton's invocation of *Abramson v. Caribbean Cruise Line, Inc.*, No. 2:14-CV-00435, 2014 WL 2938626, at *9 (W.D. Pa. June 30, 2014), is equally unavailing. Indeed, there, the relevant defendant did not even "contest its being subject to [the] Court's specific personal jurisdiction, nor [did] it make any indication why it should not be subject to [the] Court's jurisdiction." *Id.*

[9] Shelton's inclusion of his credit card statement is not competent evidence of his residency. Although his statement shows various purchases, including some purportedly made in Pennsylvania, that does not conclusively

Ohio case, Shelton has not shown a distinctive affiliation between the underlying cause of action and National Gas's activities in Pennsylvania.

### IV. Shelton Has Not Shown That A Brief Stay Is Unwarranted

Shelton has not adequately demonstrated that a stay is unwarranted. Not only does his opposition fail to address the four factors that courts consider when determining whether to grant a stay, but his two stay-related arguments are both incorrect and illogical. First, Shelton argues that this Court need not await guidance from the D.C. Circuit in *ACA International* because that case "will not serve to alter or interpret the longstanding statutory definition of an ATDS or any holdings which pre-date the 2015 FCC Order." (Opp'n 20.) Shelton offers no citation for this premise, which is plainly belied by a legion of cases. *See*, *e.g.*, *Rajput v. Synchrony Bank*, 221 F. Supp. 3d 607, 616 (M.D. Pa. 2016) (noting that one of "the questions expected to be addressed by the D.C. Circuit Court of Appeals [is] whether the FCC acted arbitrarily and capriciously in expanding the definition of ATDS" and granting a stay to "help clarify and streamline the legal issue concerning the definition of ATDS") (internal citations omitted); *Coatney v. Synchrony Bank*, No. 6:16-cv-389, 2016 WL 4506315, at * 1 (M.D. Fla. Aug. 2, 2016) ("In *ACA International*, the D.C. Circuit will address what constitutes an 'ATDS' for purposes of a TCPA violation."); *Fontes v. Time Warner Cable Inc.*, No. 14-cv-2060, 2015 WL 9272790, at * 3 (C.D. Cal. Dec. 17, 2015) (same). As the D.C. Circuit's opinion in *ACA International* will, at the very least, "focus discovery concerning Defendant's alleged ATDS for both parties," this Court should grant the stay to avoid piecemeal, inefficient litigation. *Rajput*, 221 F. Supp. 3d at 616.

Shelton's second basis for opposing National Gas's motion to stay is, at best, illogical.

---

establish that Shelton is a resident of Pennsylvania. Shelton could have, for example, simply made those purchases while visiting the state.

Shelton contends that a stay comes with "an extreme risk of prejudice for the Plaintiff, as the Plaintiff's putative class is based off the fact that the TCPA claims are governed by the four year federal statute of limitations in 28 U.S.C. § 1658(a)[.]" (Opp'n 21.) Somehow, Shelton ties the TCPA's four-year statute of limitations to an increased risk of spoliation: "However, not all telecommunications companies, including the companies that are used to engage in automated telemarketing, keep records of telephone activities for up to four years, and without an immediate gathering or records, the likelihood of destruction of this evidence increases with each passing day." *Id.* But Shelton's argument is a red herring: There is no connection between the TCPA's four-year statute of limitations and the risk of spoliation. If that were true, courts would never grant motions to stay in cases advancing TCPA causes of action. The parties have preservation obligations that aren't affected or changed in the face of a temporary stay. As such, there is no risk that Shelton will suffer prejudice from a stay.

| | |
|---|---|
| Dated: November 28, 2017 | Respectfully submitted, |
| | MORGAN, LEWIS & BOCKIUS LLP |
| | /s/ *Ezra D. Church* <br> Ezra D. Church <br> Andrew W. Katz <br> 1701 Market Street <br> Philadelphia, PA 19103-2921 <br> 215-963-5000 <br> ezra.church@morganlewis.com <br> andrew.katz@morganlewis.com |
| | Michelle D. Pector* <br> 1000 Louisiana St., Suite 4000 <br> Houston, TX 77002-5006 <br> 713.890.5471 <br> michelle.pector@morganlewis.com |
| | *\* pro hac vice application forthcoming* |
| | *Attorneys for Defendant National Gas & Electric* |