IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES E. SHELTON | : |
| | :   CIVIL ACTION |
|    v. | : |
| | :   NO. 17-4063 |
| NATIONAL GAS & ELECTRIC, LLC | : |

## MEMORANDUM

**SURRICK, J.**                                                    **APRIL 5, 2019**

Plaintiff brought suit against Defendant alleging violations of the Telephone Consumer

Protection Act of 1991, 47 U.S.C. § 227 ("TCPA"). Presently before the Court is Defendant's

Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1),

12(b)(2), and 12(b)(6). (ECF No. 5.) For the reasons that follow, we will deny Defendant's

Motion.

## I.    BACKGROUND

### A.    Factual Background

Plaintiff's Complaint alleges that he has a permanent residence in Pennsylvania, but

attends school at Case Western University in Ohio, where he has lived while attending school

since August 25, 2017. (Compl. ¶ 7, ECF No. 1; Affidavit of Pl. ¶¶ 11-12, Pl.'s Resp. to MTD

Ex. 2, ECF No. 8.) Plaintiff also owns a cell phone with a 484 area code. (Compl. ¶ 24.) The

484 area code represents a Pennsylvania phone service region. Plaintiff's phone number is also

registered on the National Do Not Call Registry, which alerts telemarketers that Plaintiff does

not want to receive solicitations at that number. (*Id.* ¶¶ 14, 24.) Plaintiff alleges that this cell

phone is the only phone that he owns, but that he also uses it for business purposes. (Affidavit of

Pl. ¶¶ 2, 5.) Specifically, Plaintiff owns a business called Final Verdict Solutions, which "is in

the judgment collection business." (*Id.* ¶¶ 5, 7.) Plaintiff does not purchase or use telephones "for the sole purpose of bringing lawsuits under the TCPA." (*Id.* ¶ 4.) However, his business website states that telemarketers are not welcome to call his cell number. (*Id.* ¶ 9.)

Plaintiff alleges that, on August 18, 2017, just before he went to Ohio to attend school, he received a telemarketing call on his cell phone from Defendant, National Gas & Energy, LLC. (Compl. ¶ 23.) Defendant is an energy company that is incorporated and headquartered in Texas. (*Id.* ¶¶ 8, 20.) Plaintiff has never done any business with Defendant, provided Defendant with his phone number, or consented to receive telemarketing calls from Defendant. (*Id.* ¶ 30-31.) When Plaintiff received Defendant's call, he allowed it to go to voicemail. (*Id.* ¶ 25.) The voicemail was comprised of a "distinctive click and pause, followed by Defendant's telemarketing representative saying 'hello.'" (*Id.* ¶ 26.) Plaintiff called Defendant back and "received a scripted pitch from Victor Melendez about National Gas's services." (*Id.* ¶ 28.) Plaintiff described the call as "a nuisance" and "annoying and harassing," and stated that it "occupied Plaintiff's telephone line from legitimate communication." (*Id.* ¶ 38.) He also alleges that at least nine other callers have reported that they have received calls from the same number and the calls were telemarketing calls. (*Id.* ¶ 37.)

## B.    Procedural Background

On September 11, 2017, Plaintiff filed a Complaint against Defendant for violating the TCPA, which prohibits automated telemarketing calls made to cell phone numbers. 47 U.S.C. § 227(b)(1)(A)(iii). Plaintiff seeks to represent a class of individuals who have experienced the same harm caused by Defendant. On November 13, 2017, Defendant filed the instant Motion to Dismiss Plaintiff's Complaint, asserting that Plaintiff lacks standing to assert the claim and that this Court cannot exercise personal jurisdiction over Defendant. (MTD, ECF No. 5.) In

addition, Defendant requested a stay of the proceedings pending a decision by the Court of Appeals for the D.C. Circuit in a case that may have shed light on whether Plaintiff stated a claim. On November 21, 2017, Plaintiff filed a Response in opposition to Defendant's Motion to Dismiss and request to stay. On March 16, 2018, the D.C. Circuit issued an opinion in the aforementioned case, *ACA International v. FCC*, 885 F.3d 687 (D.C. Cir. 2018). On April 3 and 5, 2018, by letters to the Court, counsel for Plaintiff and Defendant supplemented their briefs with analyses of the effect of *ACA International* on Defendant's Motion to Dismiss the Complaint pursuant to Rule 12(b)(6).

## II.    DISCUSSION

The section of the TCPA at issue here prohibits "any person within the United States" from "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1). The statute defines "automatic telephone dialing system" ("ATDS")[1] as "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." *Id.* § 227(a)(1). The statute provides that a person may bring a private right of action based on violation of subsection (b) to enjoin the person in violation and/or "to recover for actual monetary loss from such a violation, or to receive $ 500 in damages for each such violation, whichever is greater." *Id.* § 227(b)(3).

In its Motion, Defendant seeks to dismiss the Complaint because, it argues, Plaintiff's judgment recovery business precludes him from asserting an injury-in-fact or that his damages

---

[1] Courts discussing the TCPA use the terms "ATDS" and "autodialer" interchangeably to refer to automatic telephone dialing systems.

3

fall within the "zone of interests" necessary to establish standing. Defendant also argues that Defendant's connections to Pennsylvania are too tenuous for this Court to exercise personal jurisdiction. Finally, Defendant argues that *ACA International* changed the definition of ATDS such that Plaintiff has failed to adequately allege that such a service was used in this case. (Def.'s Letter re *ACA Int'l*, on file with the Court.)

In his Response, Plaintiff argues that his judgment recovery business does not preclude him from asserting either an injury-in-fact or that he is within the zone of interests of the TCPA. He also asserts that Defendant's connections to Pennsylvania support specific personal jurisdiction, and that the D.C. Circuit's decision in *ACA International* does not have any effect on the case at this stage of litigation and will only serve to streamline discovery with respect to the technology that was used in making the call to Plaintiff. (Pl.'s Letter re *ACA Int'l*, on file with the Court.)

We will address each of Defendant's arguments.

## A.   12(b)(1) Motion to Dismiss for Lack of Standing

"The doctrine of standing incorporates both a constitutional element and a non-constitutional, 'prudential' element." *Joint Stock Soc'y v. UDV N. Am., Inc.*, 266 F.3d 164, 174-75 (3d Cir. 2001) (citation omitted). Each of these elements has a separate test, and the plaintiff has the burden of showing that they have standing sufficient to confer subject matter jurisdiction under both tests. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). Defendant argues that Plaintiff cannot establish either constitutional or prudential standing. We will address constitutional standing before turning to prudential standing.

A challenge to standing under Rule 12(b)(1) can take two forms: a facial challenge or a factual challenge. When a facial challenge is made, the court is restricted to a review of the

4

allegations in the pleadings and any documents referenced therein. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 177 (3d Cir. 2000). When a factual challenge is made, a party challenges the facts alleged in the pleadings by presenting contrary evidence. *Id.* In a factual challenge to standing, "no presumptive truthfulness attaches to the plaintiff's allegations" and the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Davis*, 824 F.3d at 346 (citation and alterations omitted). Defendant's challenge appears to be factual, given that it primarily criticizes Plaintiff's expressed motives in bringing this action and attaches additional evidence, such as Plaintiff's business webpage and evidence of other lawsuits. Therefore, we will consider all the evidence in the record to assess Defendant's constitutional and prudential challenges to Plaintiff's standing.

### 1. *Constitutional Standing*

A plaintiff must demonstrate their constitutional standing by showing: "(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 272 (3d Cir. 2016) (citation and internal quotation marks omitted). Defendant only challenges the injury-in-fact prong of this test. To establish an injury-in-fact, Plaintiff must show that he has suffered "an invasion of a legally protected interest" that is both "actual or imminent, not conjectural or hypothetical" and "concrete and particularized." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted). The Third Circuit Court of Appeals has held that "the actual or threatened injury required by Art[icle] III may exist *solely by virtue of statutes creating legal rights*, the invasion of which creates standing." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 636 (3d. Cir. 2017) (citation

5

and internal quotation marks omitted) (emphasis in original).[2] A concrete injury has been pled when one sues under a statute alleging "the very injury [the statute] is intended to prevent." *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3d Cir. 2017) (citation and internal quotation marks omitted).

Plaintiff has sufficiently alleged an injury-in-fact. When enacting the TCPA, Congress stated that it was motivated by "outrage[] over the proliferation of intrusive, nuisance calls to their homes from telemarketers" to "[b]an[] such automated or prerecorded telephone calls to the home." TCPA, Pub. Law No. 102-243, § 2(6), (12), 105 Stat. 2394 (1991). Plaintiff has alleged that he received an automated telemarketing call from Defendant that was a nuisance and was annoying and harassing. This is the very injury the statute was intended to prevent. *See Susinno*, 862 F.3d at 351-52 ("[I]n asserting 'nuisance and invasion of privacy' resulting from a single prerecorded telephone call, [plaintiff's] complaint asserts 'the very harm that Congress sought to prevent,' arising from prototypical conduct proscribed by the TCPA."); *Abramson v. CWS Apt.*

---

[2] We note that *Horizon* was decided after *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), and *Doe v. National Board of Medical Examiners*, 199 F.3d 146 (3d Cir. 1999). Defendant relied on *Spokeo* and *Doe* for the proposition that "[m]erely invoking a federal statute is insufficient, on its own, to confer standing." (MTD 5.) However, the court in *Horizon* acknowledged *Doe* as being "not . . . entirely consistent" and stated that cases subsequent to *Doe* "have been decidedly in favor of allowing individuals to sue to remedy violations of their statutory rights, even without additional injury." *Horizon*, 199 F.3d at 635-36. The court in *Horizon* also interpreted *Spokeo* to mean that "there are some circumstances where the mere technical violation of a procedural requirement of a statute cannot, in and of itself, constitute an injury in fact." *Id.* at 638. In this case, we are not dealing with a "mere technical violation of a procedural requirement of a statute," but rather a violation of the substantive rights conferred in the TCPA. Importantly, the *Horizon* court stated that, "[a]lthough it is possible to read the Supreme Court's decision in *Spokeo* as creating a requirement that a plaintiff show a statutory violation has caused a 'material risk of harm' before he can bring suit, we do not believe that the Court so intended to change the traditional standard for the establishment of standing." *Id.* at 637-38 (internal citation omitted). Accordingly, we believe that the rule in *Horizon*—that a substantive statutory violation, alone, creates an injury—is the most appropriate to apply in this situation.

6

*Homes, LLC*, No. 16-426, 2016 U.S. Dist. LEXIS 146627, at \*6 (W.D. Pa. Oct. 24, 2016)

(finding that plaintiff adequately alleged injury-in-fact under TCPA because he received

automated calls in violation of TCPA).

Defendant argues that Plaintiff cannot demonstrate an injury-in-fact because he operates

a professional judgment recovery business and "a TCPA litigation operation" in which he files

TCPA lawsuits either to generate profit or punish telemarketers. (MTD 6, 7.) Defendant

contends that Plaintiff's claim is "based on calls to a business number *that the plaintiff used*

*specifically to drum up TCPA litigation.*" (MTD 5 (emphasis in original).) To support its

argument, Defendant attaches a screenshot of Plaintiff's business webpage, in which Plaintiff

states:

> If you are reading this website, you are most likely a telemarketer that has illegally
> called my phone. You are going to be sued. I played along with your telemarketer
> script in order to find out who you really are. . . . Put [Plaintiff's cell number] on
> your do not call list. . . . [H]ire a really good lawyer."

(MTD 6-7.) The page also has a tab for "James' TCPA Cases," and Defendant notes that

Plaintiff filed seven TCPA lawsuits in 2017. (*Id.*) Defendant asserts that, under the

circumstances, the calls are neither intrusive nor a nuisance, but rather something that Plaintiff

"hopes for and encourages." (*Id.* at 1, 6-7.)

Defendant cites the case of *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782 (W.D.

Pa. 2016), in support of its position. In *Stoops*, the court granted summary judgment in favor of

the defendant in a TCPA action because the plaintiff could not prove that it had sustained an

injury-in-fact. Specifically, the plaintiff, a Pennsylvania resident, had purchased more than 35

cell phones, registered them in Florida in order to draw telemarketers targeting "economically

depressed" consumers, recorded all telemarketing calls she received in order to file TCPA

lawsuits, and admitted at deposition that the phones were used solely for that purpose. *Id.* at 788.

The court held that, "[b]ecause Plaintiff has admitted that her only purpose in using her cell phones is to file TCPA lawsuits, the calls are not 'a nuisance and an invasion of privacy.'" *Id.* at 800.

Even if this Court were bound by the decision in *Stoops*, neither the facts nor the procedural posture of this case mirror it. First, the court in *Stoops* was deciding a motion for summary judgment and, thus, had the benefit of discovery to support its decision. Here, we are dealing with a Motion to Dismiss in which we have a limited amount of evidence to consider. Most importantly, Defendant has not introduced any evidence that Plaintiff's phone is used solely for business purposes or "specifically to drum up litigation." Although Plaintiff's website lists his cell phone number as his business number, and Plaintiff himself admitted in an affidavit that he uses his cell phone number for his judgment recovery business, it would be premature to conclude that Plaintiff's *only* purpose in using his cell phone is to file lawsuits. Indeed, we can infer from Plaintiff's affidavit, in which he states that his cell phone is his only phone, that the phone is also used for non-business purposes. With the benefit of discovery, Defendant may ultimately be able to establish its position, but dismissal would be improper at this stage given the lack of evidence to substantiate Defendant's claims. *See Cunningham v. Capital Advance Sols., LLC*, Civil Action No. 17-13050, 2018 U.S. Dist. LEXIS 197590, at *8-12 (D.N.J. Nov. 20, 2018) (denying motion to dismiss pursuant to *Stoops* even though plaintiff had filed more than 85 TCPA lawsuits because plaintiff identified "various non-business purposes for which he utilizes his cell phone" and discovery would reveal whether plaintiff was more similar to plaintiff in *Stoops*); *Abramson v. Oasis Power LLC*, No. 18-479, 2018 U.S. Dist. LEXIS 129090, at *17 (W.D. Pa. July 31, 2018) (denying motion to dismiss TCPA claim pursuant to *Stoops* because

8

only evidence in record did not indicate that cell phone's sole purpose was to bring TCPA lawsuits).

In addition, the fact that Plaintiff warns telemarketers on his website that he will sue them if they violate the TCPA does not raise an inference that he "hopes for and encourages" potential defendants, acquires phones to increase his chances of receiving calls, or is doing anything other than exercising his rights. The fact that he "play[s] along" with telemarketing scripts to "find out who [they] really are" is not as devious as Defendant suggests. A plaintiff must know the name of the telemarketer that violated the TCPA in order to bring suit against it, and the content of the message can help prove that it was a solicitation. Defendant also focuses on the fact that it was only after Plaintiff called Defendant back that he received any sort of marketing message. Defendant argues that, before Plaintiff made that call, Plaintiff's only "injury" was a single missed call and a voicemail comprised only of a "hello." Therefore, Defendant argues, any telemarketing was essentially sought out, such that Plaintiff cannot allege he was injured. However, the plain language of the TCPA requires only that a person have "ma[d]e a call . . . using any [ATDS] . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1). The statute does not require that the plaintiff have answered the call, received any message, or spoken to any person, and Defendant has not cited to any case law interpreting the TCPA to require such involvement. Plaintiff's injury was the receipt of a call in violation of the TCPA.

### 2. *Prudential Standing*

The requirement of prudential standing is a judicial self-management tool used "to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those litigants best suited to assert a particular claim." *Joint*

*Stock Soc'y*, 266 F.3d at 179 (citation omitted). In the Third Circuit, prudential standing requires that:

1. a litigant assert his [or her] own legal interests rather than those of third parties,

2. courts refrain from adjudicating abstract questions of wide public significance which amount to generalized grievances, and

3. a litigant demonstrate that her interests are arguably within the zone of interests intended to be protected by the statute, rule, or constitutional provision on which the claim is based.

*Freeman v. Corzine*, 629 F.3d 146, 154 (3d Cir. 2010) (citation omitted). In this case, Defendant challenges only the third requirement, that Plaintiff's interests fall within the zone of interests intended to be protected by the statute.

Plaintiff has demonstrated that his interests fall within the zone of interests intended to be protected by the TCPA. As stated above, Congress was clear when it enacted the TCPA that its purpose is to protect consumers from intrusive, nuisance automated telemarketing calls. *See also Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 325 (3d Cir. 2015) ("[The] primary concern in enacting § 227(b)(1)(B) was to protect [the called] party from unwanted robocalls. This necessarily means that the 'called party' is within the zone of interests protected by the Act."). Again, Plaintiff has alleged that he received an automated marketing call from a company with whom he had no relationship, and it was an annoying, harassing nuisance.

Defendant argues that, because Plaintiff operates a business that includes filing TCPA lawsuits for profit, his interests do not fall within the zone of interests intended to be protected by the statute. Defendant again cites to *Stoops*. On the issue of prudential standing, the court in *Stoops* held that the plaintiff did not have prudential standing because "Plaintiff's interests, which include purchasing cell phones with the hope of receiving calls from creditors for the sole

10

purpose of collecting statutory damages, are not 'among the sorts of interests [the TCPA was] specifically designed to protect.'" *Stoops*, 197 F. Supp. 3d at 805.

In this case, Defendant has not offered any evidence that Plaintiff purchased his cell phone with the hope of receiving calls for the sole purpose of collecting statutory damages. Again, we note that *Stoops* was a decision on a motion for summary judgment and had the benefit of complete discovery, including a deposition in which the plaintiff admitted her motives. The only evidence before the Court at this stage demonstrates that Plaintiff has requested in multiple forms that he not be targeted for solicitation—by registering his number on the Do Not Call Registry and stating on his website that he does not wish to receive such calls—and that he derives a profit when companies simultaneously ignore his requests and violate the TCPA. The fact that Plaintiff derives a profit from these lawsuits is exactly what Congress intended. *See* 47 U.S.C. § 227(b)(3), (c)(5) (providing statutory damages to plaintiffs in private actions pursuant to TCPA); *see also Bais Yaakov of Spring Valley v. Educ. Testing Serv.*, No. 13-4577, 2019 U.S. Dist. LEXIS 43985, at *44 (S.D.N.Y. Mar. 18, 2019) ("In the absence of authority to the contrary, the Court concludes that Plaintiff's filing of other TCPA lawsuits does not remove it from the zone of interests that the TCPA was intended to protect."); *Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1197 (M.D. Tenn. 2017) (finding that "professional plaintiff" had prudential standing despite using TCPA for profit because "[t]he TCPA does not merely contemplate self-interested plaintiffs—it encourages them." (citing TCPA's statutory damages provision for private actions)). Moreover, there is no evidence that Plaintiff hopes he will receive such calls or that he has taken any action to increase his chances of receiving the calls. As stated above, Plaintiff's only intentional engagement with Defendant was calling it back to "find out who [it] really [was]," which is a prerequisite to filing a lawsuit.

11

At this stage, there is no evidence that Plaintiff is doing anything other than "pursu[ing] his rights." *CWS Apt. Homes*, 2016 U.S. Dist. LEXIS 146627, at \*7 (finding prudential standing even though plaintiff had filed sixteen other TCPA lawsuits); *see also Hossfeld v. Compass Bank*, No. 16-2017, 2017 U.S. Dist. LEXIS 182571, at \*39 (N.D. Ala. Nov. 3, 2017) (declining to follow *Stoops*' reasoning on prudential standing until factual record more developed).

Therefore, at this juncture, Plaintiff has adequately demonstrated that he has suffered an injury-in-fact and that his interests are within the zone of interests the TCPA was intended to protect.

**B. 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction**

Next, Defendant asserts that this Court lacks personal jurisdiction over it. A district court "typically exercises personal jurisdiction according to the law of the state where it sits." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007); Fed. R. Civ. P. 4(k)(1)(A) (stating that service of summons "establishes personal jurisdiction over a defendant: (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located"). Pennsylvania's long-arm statute authorizes courts to exercise personal jurisdiction "to the fullest extent allowed under the Constitution of the United States . . . ." 42 Pa. Cons. Stat. Ann. § 5322(b). Due process requires that the nonresident defendant have "minimum contacts" with the forum state, and "that the exercise of jurisdiction comport with 'traditional notions of fair play and substantial justice.'" *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Two types of personal jurisdiction have evolved from these due process principles: general jurisdiction and specific jurisdiction. General personal jurisdiction is satisfied when a defendant's "affiliations with the State are so continuous and systematic as to render them

12

essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation and internal quotation omitted); *see also Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 223 (3d Cir. 2016). Specific personal jurisdiction exists when "the plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant should reasonably anticipate being haled into court in that forum." *Remick*, 238 F.3d at 255 (citation and internal quotation marks omitted). In order to assert specific personal jurisdiction, Plaintiff must show that his claim arises out of or relates specifically to activities that Defendant purposefully directed at Pennsylvania. *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (citations omitted).

When faced with a Rule 12(b)(2) motion to dismiss based on lack of personal jurisdiction, the court must accept the plaintiff's allegations as true and resolve disputed facts in favor of the plaintiff. *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). If a defendant contends that the Court lacks personal jurisdiction over it, then the plaintiff must "prove by affidavits or other competent evidence that jurisdiction is proper." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (quoting *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996)). As is the case here, if the district court does not hold an evidentiary hearing, a plaintiff "need only establish a prima facie case of personal jurisdiction." *Id.* (citation omitted).

### 1. *Parties' Arguments*

Defendant is a Texas corporation with its principal place of business in Texas. Plaintiff does not contend that general personal jurisdiction exists here. Instead, Plaintiff contends that the Court can exercise specific personal jurisdiction over Defendant. Defendant argues that Plaintiff cannot establish that specific personal jurisdiction exists because Plaintiff was not a

13

resident of Pennsylvania, or was not in Pennsylvania, when Defendant called him. In support of this argument, Defendant cites to another TCPA lawsuit that Plaintiff filed in Ohio, *Shelton v. LIG International, LLC*, No. 17-1868, ECF No. 1 (N.D. Ohio, filed Sept. 6, 2017) ("*Shelton v. LIG*"). In that complaint, filed the same month as the Complaint here, Plaintiff alleges that he is an Ohio resident and that, as an Ohio resident, he received calls to his private cell number during the summer of 2017, including on August 1, 3, 4, 8, 9, 21, 22, 23, and 29, 2017. *Shelton v. LIG* Compl. ¶¶ 5-6, 24-48. Defendant notes that the call in this case allegedly took place on August 18, 2017, and that Plaintiff alleges he was a Pennsylvania resident at that time. Defendant adds that, because Plaintiff was neither a resident of Pennsylvania nor in Pennsylvania at the time of the call, the fact that Plaintiff has a Pennsylvania area code, alone, is not enough to support jurisdiction.

As mentioned above, Plaintiff rebuts Defendant's argument with an affidavit in which he states that he attends school in Ohio and has lived there while attending school since August 25, 2017, but that he maintains a permanent residence in Pennsylvania. Moreover, he alleges that he was in Pennsylvania when he received the call in this case, despite having stated in *Shelton v. LIG* that he received calls on August 1, 3, 4, 8, 9, 21, 22, 23, and 29, 2017, as an Ohio resident. Plaintiff also attached a credit card statement from August of 2017 showing that he made purchases in Pennsylvania until August 24, 2017. (Credit Statement, Pl.'s Resp. Ex. 2) Finally, Plaintiff argues that the state with which a plaintiff's area code is associated is generally dispositive evidence that a defendant targeted that forum and subjected itself to personal jurisdiction there.

14

## 2. Analysis

Plaintiff has satisfied his burden of demonstrating that specific personal jurisdiction exists. In TCPA cases, courts generally find that specific personal jurisdiction exists when a defendant sends a message into the forum state by targeting a phone number in that forum. However, courts do not consistently define whether and when a phone number is "in" a particular forum. Some courts find the location of the area code to be dispositive, while others find the residency of the plaintiff or the location where the call was received to be dispositive. *See, e.g., Abramson v. Agentra, LLC*, No. 18-615, 2018 U.S. Dist. LEXIS 212285, at *12 (W.D. Pa. Dec. 18, 2018) ("At this juncture it is reasonable to infer from the allegations in the amended complaint that Agentra purposefully aimed its conduct at Pennsylvania by contacting directly Abramson's Pennsylvania mobile and residential telephone numbers."); *Hicks v. Health Ins. Innovations, Inc.*, No. 17-3344, 2017 U.S. Dist. LEXIS 214098, at *4 (D.N.J. Dec. 20, 2017) (finding that New Jersey court lacked personal jurisdiction over TCPA defendant because plaintiff "merely maintains a cell phone with a New Jersey area code" and was not citizen of New Jersey, did not receive the calls in question in New Jersey, and did not allege that she suffered any harm in New Jersey); *CWS Apt. Homes*, 2016 U.S. Dist. LEXIS 146627, at *10 (finding area code dispositive of personal jurisdiction in TCPA case and listing cases that have held same); *Michaels v. Micamp Merch. Servs.*, No. 13-191, 2013 U.S. Dist. LEXIS 159782 (W.D. Pa. Nov. 8, 2013) (finding Pennsylvania lacked personal jurisdiction over TCPA defendant because plaintiff was merely present in Pennsylvania when she received call in question, but was not Pennsylvania resident, did not have Pennsylvania phone number, and did not allege that defendant knew she was in Pennsylvania).

15

Here, we need not decide which factors are dispositive because Plaintiff has demonstrated that he was a Pennsylvania resident when he received the call, was physically present in Pennsylvania, and has a Pennsylvania phone number. Although Plaintiff's explanation of his dual residency is not a model of jurisdictional clarity, he has asserted in an affidavit, as he is required, that he was in fact a Pennsylvania resident at the time he received the call from Defendant. A credit card statement from August of 2017 supports Plaintiff's assertions that he was in Pennsylvania at the time he received the call and was still a Pennsylvania resident at the time. It is common for students to maintain two residences. The date of the move, August 25th, is consistent with a move in preparation for a new school year. Therefore, the statements in Plaintiff's affidavit are not as implausible as Defendant suggests. Moreover, Plaintiff allegedly moved to Ohio after the call in this case was made, but before the calls from the defendant in *Shelton v. LIG* ceased, so it is not unreasonable for Plaintiff to file his *LIG* lawsuit in Ohio and assert that he is an Ohio resident for the purposes of that action. Given Plaintiff's affidavit, credit card statement, and Pennsylvania area code, we need not engage in any further analysis.

Plaintiff has also adequately demonstrated the remaining elements of a personal jurisdiction analysis. The call in question was clearly related to Defendant's contacts with Pennsylvania, which included targeting a phone number in Pennsylvania. Moreover, exercising personal jurisdiction over Defendant would not offend the traditional notions of fair play and substantial justice. These traditional notions include analysis of five factors: "the burden on the defendant, the interests of the forum State, the plaintiff's interest in obtaining relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Grand Entm't Grp. v. Star Media Sales*, 988 F.2d 476, 483 (3d Cir. 1993) (quoting *Asahi Metal*

16

*Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987)). Defendant has not argued that it would be burdened by being called into Pennsylvania for litigation of this case, although we can assume some hardship given that it is based in Texas. However, "when minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi*, 480 U.S. at 114. With regard to the next two factors, Plaintiff clearly has an interest in obtaining relief under the TCPA, and Pennsylvania has an interest in protecting its residents from TCPA violations. *Id.* And with regard to the last two factors, Defendant has not argued that jurisdiction would be unreasonable based on the interstate judicial system's interest in obtaining the most efficient resolution of controversies or the shared interest of the several States in furthering fundamental substantive social policies. We may properly assert personal jurisdiction over Defendant.

## C. 12(b)(6) Motion to Dismiss for Failure to State a Claim

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. A motion under Rule 12(b)(6) tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Under Rule 8(a)(2), "[a] pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."

17

*Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

### 1. Relevant Law

As stated above, the section of the TCPA at issue here prohibits "any person within the United States" from "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any [ATDS] . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1). The statute defines ATDS as "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." *Id.* § 227(a)(1). Therefore, to state a cause of action under the TCPA, "a plaintiff must allege that (1) a call was made; (2) the caller used an [ATDS] . . . ; (3) the telephone number called was assigned to a cellular telephone service; and (4) the caller did not have prior express written consent of the recipient. *Richardson v. Verde Energy USA, Inc.*, No. 15-6325, 2016 U.S. Dist. LEXIS 175642, at *5 (E.D. Pa. Dec. 19, 2016) (citing 47 U.S.C. § 227(b)(1)(A)(iii)).

Defendant challenges only the second of the above requirements, that it used an ATDS. Defendant argues that the D.C. Circuit's recent decision in *ACA International* confirms that Plaintiff cannot prevail on his TCPA claim because the court in that case narrowed the definition of an ATDS such that Plaintiff's allegations that Defendant used such a system no longer state a claim. Plaintiff counters that his allegations are broad enough to encompass Defendant's use of an ATDS that still qualifies as such even after *ACA International*, and that only discovery will reveal whether Defendant used an ATDS within the meaning of the TCPA.

## 2. *Regulatory and Case Law Background*

Pursuant to authority granted to the Federal Communication Commission ("FCC") in the TCPA,[3] the FCC has issued declaratory orders that, among other things, have expanded the kinds of devices that they consider to have the "capacity" to function as autodialers, including a device called a "predictive dialer." In an order issued in 2003, the FCC explained that:

> A predictive dialer is an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that "predicts" the time when a consumer will answer the phone and a telemarketer will be available to take the call. ... *In some instances, a consumer answers the phone only to hear "dead air" because no telemarketer is free to take the call.*

*In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 13 ¶ 8 n. 31 (2003) ("2003 Order") (emphasis added). The FCC went on to find that such dialers are autodialers because "[t]he hardware, *when paired with certain software*, has the *capacity* to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers," even though, "in most cases, telemarketers program the numbers to be called into the equipment." *Id.* at 205 ¶ 131 (emphasis added). In 2008, the FCC addressed a challenge to, and reaffirmed, its finding that predictive dialers are autodialers. *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 566 ¶¶ 12-14 (2008) ("2008 Order"). The FCC again reaffirmed its finding that predictive dialers are considered autodialers in an order issued in 2015. *In re Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991*, 30 FCC Rcd. 7991, 7974 ¶ 10 (2015) ("2015 Order"). In the 2015 Order, the FCC clarified that "the capacity of an autodialer is not limited to its current

---

[3] The TCPA explicitly confers upon the FCC "the flexibility to design different rules for those types of automated or prerecorded calls that it finds are not considered a nuisance or invasion of privacy, or for noncommercial calls, consistent with the free speech protections embodied in the First Amendment of the Constitution." TCPA, Pub. Law No. 102-243, § 2(13).

19

configuration but also includes its potential functionalities." *Id.* at 7974 ¶ 16. Thus, even if a device does not have the current capacity to generate and dial phone numbers, if the device can be paired with software to do so in the future, it qualifies as an ATDS whether or not the software has in fact been installed—as the FCC has described predictive dialers since 2003. The FCC also declined to adopt a rule that would "clarify[] that a dialer is not an autodialer unless it has the capacity to dial numbers without human intervention," *id.* at 7976 ¶ 17, thus implying that a device could still be considered an ATDS even if it required some level of human intervention to generate and dial numbers.

### 3.  *Recent Statutory Interpretation*

In *ACA International v. FCC*, the D.C. Circuit upheld certain challenges to the FCC's 2015 Order. First, the court struck down the portions of the 2015 Order stating that a device is considered an ATDS even if it cannot presently generate or dial phone numbers without human intervention, but has the capacity to do so with additional software. *ACA Int'l*, 885 F.3d at 700.[4] Next, the court struck down the portions of the 2015 Order stating that a device could qualify as an ATDS even if it requires some human intervention to generate or dial phone numbers. *Id.* at 703. Notably, the court "did not specify that a particular ATDS definition was wrong or what types of devices would qualify as an ATDS." *Wilson v. Quest Diagnostics Inc.*, No. 18-11960, 2018 U.S. Dist. LEXIS 212023, at *6 (D.N.J. Dec. 10, 2018).

The Third Circuit adopted *ACA International* in *Dominguez v. Yahoo, Inc.*, 894 F.3d 116 (3d Cir. 2018), and stated that, "[i]n light of the D.C. Circuit's holding, we interpret the statutory

---

[4] The court's primary concern was that smartphones—the cellular devices used by "a significant majority of American adults"—would fall into this category, such that "an uninvited call or message from a smartphone violates the statute even if autodialer features were not used to make the call or send the message." *Id.* at 697.

definition of an autodialer as we did prior to the issuance of 2015 Declaratory Ruling." *Id.* at 119. The court then stated that a device is an ATDS if it has "the present capacity to function as an autodialer." *Id.* at 119, 121. Thus, predictive dialers are still considered autodialers so long as they have the present capacity—rather than a hypothetical future capacity, with the addition of software—to generate and dial phone numbers. *See, e.g.*, *Might v. Capital One Bank United States, N.A.*, No. 18-716, 2019 U.S. Dist. LEXIS 21379, at *8-9 (W.D. Okla. Feb. 11, 2019) (holding that, after *ACA Int'l*'s treatment of predictive dialers, "the issue is whether the calls about which Plaintiff complains were the product of a machine that was capable at that time of generating random and sequential numbers, not whether the call to him was the result of such."); *Collins v. Nat'l Student Loan Program*, No. 17-5345, 2018 U.S. Dist. LEXIS 214251, at *14 (D.N.J. Dec. 20, 2018) (holding that device with predictive capabilities was not an ATDS because plaintiff failed to prove on summary judgment that device "has the 'present capacity' to initiate autodialed calls to cell phone numbers without modifications to the system"); *Richardson v. Verde Energy USA, Inc.*, 354 F. Supp. 3d 639, 650 (E.D. Pa. 2018) ("[T]he Court concludes that a predictive dialing device that merely dials numbers from a stored list of numbers—rather than having generated those numbers either randomly or sequentially—is not an ATDS."); *Gonzalez v. Ocwen Loan Servicing, LLC*, No. 18-340, 2018 U.S. Dist. LEXIS 153480, at *15 (M.D. Fla. Sep. 5, 2018) ("Having considered the statute [after *ACA Int'l*], this Court concludes that the definition of an ATDS *would not include* a predictive dialer that lacks the capacity to generate random or sequential telephone numbers and dial them; but it *would include* a predictive dialer that has that capacity." (emphasis in original)).

In the context of a motion to dismiss, a plaintiff must allege facts that make it plausible that the defendant used a device that had the present capacity to generate and dial phone

numbers.[5] In *Wilson v. Quest Diagnostics Inc.*, the court analyzed *ACA International* and *Dominguez* and found that the plaintiff had properly pleaded that the defendant used an ATDS. 2018 U.S. Dist. LEXIS 212023 at \*8-9. She alleged that the defendant used a predictive dialer, as evidenced by "a momentary pause before someone started speaking to her," and that the defendant was attempting to collect a debt owed by someone other than her. *Id.* at \*8. The court found that these allegations raised a plausible inference that the defendant used a predictive dialer that had the present capacity to function as an autodialer. *Id.* at \*8-9; *see also Maes v. Charter Commc'n.*, 345 F. Supp. 3d 1064, 1070 (W.D. Wis. 2018) (finding plaintiff adequately pleaded use of ATDS when complaint stated that plaintiff heard dead air after answering, because predictive dialers can still be autodialers after *ACA Int'l*); *Whitehead v. Ocwen Loan Servicing, LLC*, No. 18-470, 2018 U.S. Dist. LEXIS 182386, at \*11 (M.D. Fla. Oct. 24, 2018) ("Whitehead's allegations—hearing a pause when she answered before hearing a voice plus her allegations that Ocwen used an ATDS—satisfy her burden at this stage in the proceedings." (citation omitted)); *Sieleman v. Freedom Mortg. Corp.*, No. 17-13110, 2018 U.S. Dist. LEXIS 129698, at \*12-14 (D.N.J. Aug. 2, 2018) (finding that plaintiff adequately alleged use of ATDS, post-*ACA Int'l* and -*Dominguez*, when he alleged that there was pause after he picked up and that he did not actually qualify for service being offered).

---

[5] We note that some courts do not require any factual allegations with regard to autodialers other than that the defendant used one. *See, e.g., Abella v. Student Aid Ctr., Inc.*, No. 15-3067, 2015 U.S. Dist. LEXIS 147299, at \*6 (E.D. Pa. Oct. 30, 2015) (denying motion to dismiss because plaintiff alleged that defendant used ATDS); *Gross v. Weinstein, Weinburg & Fox, LLC*, 123 F. Supp. 3d 575, 580 (D. Del. 2015) ("Plaintiffs have adequately alleged a claim on which relief may be granted. . . . Plaintiffs allege that WWF 'used, controlled, and/or operated automatic telephone dialing systems' in violation of the [TCPA]."). We need not decide whether a plaintiff is required to make additional factual allegations because, as discussed below, Plaintiff here has already done so.

22

### 4. *Application to Plaintiff's Complaint*

Here, Plaintiff's allegations raise a plausible inference that Defendant used a predictive dialer with the present capacity to generate and dial phone numbers. First, Plaintiff has alleged that Defendant used an ATDS. (Compl. ¶ 27.) He further alleged that "the call to the Plaintiff was transmitted using technology capable of *generating* thousands of similar calls per day." (*Id.* ¶ 5 (emphasis added).) He supports this assertion with allegations that he argues are indicative of an ATDS: he had no prior relationship with Defendant; the geographic distance between the parties; the "distinctive click and pause, followed by the Defendant's telemarking representative saying 'hello'" in the voicemail Defendant left him; and at least nine other callers have identified calls from the same number as "spam." (*Id.* ¶¶ 26-28, 30, 36-37.)

Defendant argues that these allegations only support the inference that it used a device with the "potential, theoretical capability" to function as an autodialer. (Def.'s Letter re *ACA Int'l.*) Defendant adds that Plaintiff should have alleged that Defendant "placed a call to Plaintiff using a device that could make calls without human intervention." (Def's Letter re *ACA Int'l.*) However, Plaintiff's allegations are similar to those in *Wilson* and the other cases cited above that denied motions to dismiss on the same grounds. Moreover, we cannot require a plaintiff to make allegations regarding the technical aspects of a device, including the precise level of human intervention needed to place a call, when he or she has no way of knowing those details prior to discovery. *See Battaglia v. Quicken Loans, Inc.*, No. 18-1104, 2019 U.S. Dist. LEXIS 17782, at *6 (W.D.N.Y. Feb. 4, 2019) (refusing to require plaintiff to allege details regarding defendants' calling technology at pleading stage because "it would be virtually impossible" and "would make callers virtually immune to TCPA claims" (citation and internal quotation marks omitted)); *Wilson*, 2018 U.S. Dist. LEXIS 212023, at *8-9 (denying motion to dismiss based on

23

allegation of dead air after answering because, "[d]uring discovery, the parties can explore the actual configuration of the dialing equipment used to call Plaintiff, as such evidence could shed light on whether Quest used a device capable of making autodialed calls" (citation omitted)); *Whitehead*, 2018 U.S. Dist. LEXIS 182386, at \*11 (holding that allegations regarding dead air and use of ATDS are sufficient to state claim because "[t]here is no way for Plaintiff to know the technological capabilities of the device(s) used to place the calls at issue in this case short of Plaintiff learning that information in discovery.").

Defendant adds that an ATDS was not used to place the call at issue because informal discovery has shown that Plaintiff "was called only after a National Gas representative selected a specific number to call and physically clicked on a 'connect' button in order to initiate the call." (Def's Letter re *ACA Int'l.*) Even if we were to accept Defendant's interpretation of *ACA International*—that a device cannot be considered an ATDS if it requires any human intervention to function—there is no evidence in the record regarding the device used in this case. Discovery may in fact reveal that the device at issue here required some amount of human intervention to function. However, this is not the time to address the existence or ramifications of such intervention. Plaintiff's limited allegations regarding use of an ATDS are sufficient to survive dismissal.

## III.    CONCLUSION

For the foregoing reasons, Defendant's Motion will be denied. An appropriate Order

follows.

**BY THE COURT:**

R. BARCLAY SURRICK, J.